## STATE v. JACK FERGUSON.

(Filed 8 April, 1964.)

**1. Assault § 5—**

"Serious injury" within the meaning of an assault with a deadly weapon with intent to kill, inflicting serious injury, G.S. 14-32, means physical or bodily injury, and when a particular injury may or may not be serious, depending upon its severity and painful effects, such as a "whiplash" injury to the neck, it is for the jury to determine whether the injury is serious in the light of the particular facts disclosed by the evidence.

**2. Criminal Law § 2—**

A person is presumed to intend the natural consequences of his act where a specific intent is not an element of the crime, but where a specific intent, in addition to the intent to commit the act, is required, such intent is not to be inferred as a matter of law from the commission of the act, but must ordinarily be found by the jury from the facts and circumstances of the case.

**3. Assault §§ 5, 15—**

Where the evidence tends to show an assault by defendant with a deadly weapon inflicting serious injury upon the victim, it is for the jury to determine from the facts and circumstances of the case whether the assault was committed with the specific intent to kill, and it is error for the court to charge that the jury might find an intent to kill if the defendant intended either to kill or inflict great bodily harm.

APPEAL by defendant from *Huskins, J.,* December Regular Criminal Session 1963 of MADISON.

The defendant was tried upon a bill of indictment charging that he did "unlawfully, wilfully and feloniously assault Grady Coward with a certain deadly weapon, to wit: a pickup truck, with the felonious in-

tent to kill and murder the said Grady Coward, inflicting serious injuries, not resulting in death * * *."

The State's evidence tends to show that the defendant, the son-in-law of Grady Coward, on 21 November 1963, while following Grady Coward, who was driving his automobile on the highway, accompanied by his wife and three-year-old stepdaughter, rammed his pickup truck into the Coward automobile three times. The first time he hit the automobile in the rear and knocked the car almost 30 feet down the road, causing Coward to suffer a "whiplash." The prosecuting witness testified that when he suffered this injury, "my neck popped like you'd slapped your hands." The second time the defendant hit the car of the prosecuting witness he knocked the car over into a ditch on the right-hand side of the road. After the prosecuting witness got his car back on the road, the defendant hit his car on the right side and almost forced the car over an embankment on the left side of the highway. Thereafter, the defendant passed the car which Coward was driving and went on down the highway and turned around. By the time the defendant came back up the highway, Coward had parked his car off the highway in front of a store and the occupants got out. The defendant tried to run down Coward, but Coward and the others got behind a parked truck that belonged to the REA. Thereupon, the defendant drove his truck into the front of Coward's car and broke down one of the front wheels and further damaged the car. The defendant then drove away.

The prosecuting witness testified that at the time of the trial he still suffered from the "whiplash" injury; that he could not turn his head without suffering pain; that his injury caused pains to run down his back into the back of his legs, which caused his legs to cramp and hurt; that he had made two visits to a doctor but had not been hospitalized.

The evidence of the State and the defendant tends to show that the defendant did not like for his wife to visit or stay in the home of her father; that while defendant and Coward's daughter had been married for eighteen years, the marriage had been a stormy one. The defendant testified that his father-in-law had threatened to kill him and that he bumped his car lightly to prove to him that he was not afraid of him. The father-in-law testified that he had not spoken to his son-in-law for two years.

The jury rendered a verdict of guilty of assault with a deadly weapon with intent to kill, inflicting serious injury. From the judgment imposed on the verdict, the defendant appeals, assigning error.

*Attorney General Bruton, Asst. Attorney General Richard T. Sanders for the State.*

*A. E. Leake for defendant.*

DENNY, C.J. The defendant assigns as error the failure of the court below to sustain his motion for judgment as of nonsuit made at the close of all the evidence as to the felony count in the bill of indictment.

The defendant does not contend that the evidence is insufficient to support a verdict of guilty of assault with a deadly weapon. However, he does contend that the evidence is insufficient to warrant its submission to the jury on the felony count in the bill of indictment.

The indictment was drawn under G.S. 14-32, which reads as follows: "Any person who assaults another with a deadly weapon with intent to kill, and inflicts serious injury not resulting in death, shall be guilty of a felony * * *."

In the case of *S. v. Jones,* 258 N.C. 89, 128 S.E. 2d 1, this Court, speaking through *Higgins, J.,* said: "The term 'inflicts serious injury' means physical or bodily injury resulting from an assault with a deadly weapon with intent to kill. The injury must be serious but it must fall short of causing death. Further definition seems neither wise nor desirable. Whether such serious injury has been inflicted must be determined according to the particular facts of each case."

In our opinion, a "whiplash" injury may or may not be a serious injury, depending upon its severity and the painful effect it may have on the injured victim. Therefore, we have concluded that the evidence bearing on the question of serious injury is sufficient to take the case to the jury, but the jury must determine whether or not the injury was serious in light of the particular facts disclosed by the evidence. *S. v. Jones, supra.* This assignment of error is overruled.

The appellant further assigns as error certain portions of the charge bearing on intent, as follows: "* * * Intent is said to be an act or motion (emotion) of the mind, but seldom, if ever, capable of direct or positive proof, but a person's intent is arrived at by such just and reasonable deductions from the acts and facts proven as the guarded judgment of a reasonably cautious and prudent person with (would) ordinary (ordinarily) regard (draw) therefrom. Intent is usually shown by the facts and circumstances known to the party charged with the intent, and it may be evidence (sic) by the acts and declarations of the party * * *.

"Every man in law, is presumed to intend any consequence, which naturally flows from an unlawful act and so an intent to kill is the intent which exists in the mind of a person at the time he commits the assault or criminal act, intentionally and without justification or excuse to kill his victim or to inflict great bodily harm upon him."

That portion of the foregoing charge contained in the first sentence of the first paragraph, set out above, except for the apparent errors of the court reporter, is identical with the challenged portion of the charge approved by this Court in *S. v. Watson*, 222 N.C. 672, 24 S.E. 2d 540.

The second paragraph of the charge, set out hereinabove, is erroneous, for it would allow the jury to find an intent to kill if the defendant intended either to kill or to inflict great bodily harm. But if the jury found only an intent to inflict great bodily harm, this would be insufficient to sustain the felony charge since the intent to kill is an essential element of such charge.

A person is presumed to intend the natural consequences of his act where a specific intent is not an element of the crime. In such cases, proof of the commission of the unlawful act is sufficient to support a verdict. *S. v. Elliott*, 232 N.C. 377, 61 S.E. 2d 93.

"The admission or proof of an assault with a deadly weapon, resulting in serious injury, but not in death, cannot be said, as a matter of law, * * * to establish a presumption of felonious intent, or intent to kill * * *." *S. v. Gibson*, 196 N.C. 393, 145 S.E. 772.

In *S. v. Redditt*, 189 N.C. 176, 126 S.E. 506, it is said: "The law will not ordinarily presume a murderous intent where no homicide is committed. This is a matter for the State to prove. *S. v. Allen*, 186 N.C. 302 (119 S.E. 504); *S. v. Hill*, 181 N.C. 558 (107 S.E. 140)."

A person might intentionally and without justification or excuse assault another with a deadly weapon and inflict upon him serious injury not resulting in death, but such an assault would not establish a presumption of felonious intent, or the intent to kill. Such intent must be found by the jury as a fact from the evidence. *S. v. Davis*, 214 N.C. 787, 1 S.E. 2d 104.

In the case of *S. v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915, *Parker, J.*, speaking for the Court, said: "An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred. An intent to kill 'may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances.' *S. v. Revels*, 227 N.C. 34, 40 S.E. 2d 474."

In our opinion, the defendant is entitled to a new trial. Consequently, we deem it unnecessary to consider and discuss the remaining assignments of error; the errors complained of therein may not recur on another hearing.

New trial.