State v. Alston

STATE OF NORTH CAROLINA v. BARRY EUGENE ALSTON

No. 8614SC99

(Filed 5 August 1986)

1. **Searches and Seizures § 11— warrantless search of person and automobile— evidence properly admitted**

   The trial court did not err in a prosecution for armed robbery by admitting into evidence a pistol, marked currency, and a white sweater worn during a robbery, all of which were seized from defendant's person or his automobile, where information known as a result of police radio broadcasts clearly justified the stop of defendant's automobile; a stop and frisk search of defendant's automobile was reasonable because defendant generally matched the description of the person who had committed an armed robbery three hours earlier, defendant was operating an automobile similar to that in which the robber had escaped, he and the automobile specifically matched the description provided by the clerk at a second convenience store where defendant had exhibited suspicious behavior, defendant had quickly gotten out of his car when stopped by an officer and allowed the car to roll back into the police car, and the officer described defendant's conduct as "acting weird"; and officers had probable cause to arrest defendant without a warrant for possession of stolen property after they found the pistol and were entitled to conduct a warrantless search of defendant's person. N.C.G.S. § 14-71.1. Fourth Amendment to the United States Constitution.

2. **Criminal Law § 26.5; Constitutional Law § 34— acquittal of possession of firearm by felon—conviction of armed robbery—no collateral estoppel**

   A prosecution for robbery with a firearm was not barred by an earlier acquittal on the charge of possession of a firearm by a felon where defendant had moved to sever the charges since the charge of possession of a firearm by a felon would require proof of a previous conviction of common law robbery, the State had procured both indictments before placing defendant on trial for either charge, and the State made no effort to use one of the charges as a dry run for the other.

APPEAL by defendant from *Brannon, Judge*. Judgment entered 28 August 1985 in Superior Court, DURHAM County. Heard in the Court of Appeals 14 May 1986.

Defendant was charged, in separate bills of indictment, with robbery with a firearm in violation of G.S. 14-87, and with possession of a firearm by a felon in violation of G.S. 14-415.1. Both offenses were alleged to have occurred on 10 December 1984. Defendant entered pleas of not guilty to each offense and moved for severance of the offenses. His motion was allowed, and the State

proceeded to trial upon the armed robbery charge. A mistrial was declared after the jurors were unable to agree upon a verdict.

At a subsequent session of court, defendant was placed on trial for the firearm possession charge and was found not guilty. He then moved for dismissal of the armed robbery charge, contending that the State was collaterally estopped from proceeding due to his acquittal on the firearm possession charge. The motion was denied and, upon retrial of the armed robbery charge, defendant was convicted. From judgment imposing an active 20-year prison sentence, defendant appeals.

*Attorney General Lacy H. Thornburg, by Senior Deputy Attorney General Eugene A. Smith and Associate Attorney Mabel Y. Bullock for the State appellee.*

*Neil M. O'Toole for defendant appellant.*

MARTIN, Judge.

By his assignments of error, defendant presents two issues for our review. The first involves the legality of a warrantless search of defendant's person and automobile at the time of his initial detention and the admissibility of articles seized during the course of that search. The other is whether defendant's acquittal of the firearm possession charge operates as a bar to his prosecution upon the armed robbery charge. We answer each issue adversely to defendant and find no error in his trial.

At trial, the State offered evidence tending to show that on 10 December 1984 at approximately 12:30 a.m. a black male wearing a white sweater draped over his head entered the Seven-Eleven Food Store located on Avondale Drive in Durham, pointed a .38 caliber pistol at the clerk, Jimmy Ellerbee, and demanded money. Mr. Ellerbee opened the cash drawer and placed the money, including a marked $2.00 bill, into a paper bag and gave it to the man who then turned and left the store. A witness observed him run from the store and enter a light blue compact car. The robbery was reported to Durham police officers, and a description of the robber and the automobile was broadcast over police radio.

John O'Neal, a night clerk at another Seven-Eleven store on North Duke Street, was informed of the robbery by a deputy

sheriff. He called Mr. Ellerbee and obtained a description of the robber. Shortly before 3:30 a.m., Mr. O'Neal saw defendant, a black male, drive up to the gasoline pumps in front of the store in a light blue Volkswagen Rabbit. Defendant was wearing a white sweater. Before he entered the store, defendant removed his sweater and threw it in a trash can. He then entered the store and paid for $3.00 worth of gasoline. Defendant acted as though he was nervous and told Mr. O'Neal that the police were following him and that someone was trying to frame him. Defendant then left the store to pump the gasoline; and while he was outside, Mr. O'Neal called the police. Defendant returned to the store, stayed a short time looking around the store, and then left when another customer came in. As he walked to his car, he retrieved his sweater from the trash can and put it on. He then drove out of the parking lot.

Shortly thereafter, police officers arrived at the store and were provided with a description of defendant, the automobile, and its license number. This information was broadcast over police radio. Within minutes, Officer J. L. Packard observed the light blue Volkswagen on Roxboro Street and stopped the car. Defendant was the driver and only occupant. Other officers arrived on the scene. Officer Packard told defendant why he had been stopped and that he would be detained on suspicion of armed robbery. Defendant consented to a search of his person by the officers, which revealed an amount of currency in his pocket. Officer Packard instructed another officer to search the passenger area of defendant's automobile for weapons. A .38 caliber pistol was found underneath the driver's seat. A check of the serial number of the pistol revealed that it had been reported as stolen. Defendant was placed under arrest for possession of a stolen firearm and was again searched. Currency, including the marked $2.00 bill taken during the robbery of the Avondale Drive Seven-Eleven store, was taken from defendant's pocket.

Defendant did not testify but offered evidence through the testimony of several witnesses that he was at a private club at the time the robbery occurred.

[1] Prior to trial, defendant moved to suppress the evidence seized during the search of his person and his automobile at the time of his initial detention and subsequent arrest. His first

assignment of error is directed to the denial of his motion and the admission into evidence of the pistol, the currency, and the white sweater. He argues that although the officers may have had a reasonable suspicion of criminal activity sufficient to justify the stop and brief detention of defendant, they did not have probable cause to conduct a search or to arrest him at the time the search of the automobile was conducted. Therefore, he argues, the pistol was the product of an illegal search; and since its discovery gave the officers probable cause to arrest him and to conduct the additional search of his person, the currency and sweater were also tainted and should have been suppressed.

It is now well established that a law enforcement officer may lawfully stop and detain a person where the officer has a reasonable suspicion, based upon personal observation or reliable information, that the person detained has committed a crime, even though the officer may not have probable cause to make a warrantless arrest. *Adams v. Williams,* 407 U.S. 143, 32 L.Ed. 2d 612, 92 S.Ct. 1921 (1972); *Terry v. Ohio,* 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968); *State v. Jackson,* 302 N.C. 101, 273 S.E. 2d 666 (1981); *State v. McZorn,* 288 N.C. 417, 219 S.E. 2d 201 (1975), *death sentence vacated,* 428 U.S. 904, 49 L.Ed. 2d 1210, 96 S.Ct. 3210 (1976); *State v. Adams,* 55 N.C. App. 599, 286 S.E. 2d 371 (1982). The propriety of the stop and detention depends upon whether the officer acted reasonably in light of the facts known to him at the time. *Adams v. Williams, supra.*

The information known to Officer Packard as a result of receiving police broadcasts on his radio clearly justified his stop of defendant's automobile and his detention of defendant for investigative purposes. Having lawfully stopped defendant, Officer Packard and the other officers could permissibly conduct a frisk of his person for weapons, *Terry v. Ohio, supra,* as well as the passenger area of his automobile where a weapon might be hidden if the officers had a reasonable belief, based on specific and articulable facts, that defendant posed a danger if permitted to reenter his automobile. *Michigan v. Long,* 463 U.S. 1032, 77 L.Ed. 2d 1201, 103 S.Ct. 3469 (1983). "When a search or seizure has as its immediate object a search for a weapon, . . . we have struck the balance to allow the weighty interest in the safety of police officers to justify warrantless searches based only on a reasona-

ble suspicion of criminal activity." *New York v. Class*, --- U.S. ---, ---, 89 L.Ed. 2d 81, 92, 106 S.Ct. ---, --- (1986).

We conclude that Officer Packard acted reasonably in directing the other officers to conduct a search of defendant's automobile. Defendant generally matched the description of the person who had committed an armed robbery some three hours earlier and was operating an automobile similar to that in which the robber had escaped. He and the automobile specifically matched the description provided by the clerk at the second convenience store, where defendant had exhibited suspicious behavior. When Officer Packard stopped defendant, defendant quickly got out of his car and allowed the car to roll back into the police car. Officer Packard described defendant's conduct as "acting weird." We hold these facts, taken together, sufficient to warrant "an articulable and objectively reasonable belief" that defendant was potentially dangerous. See *Michigan v. Long, supra* at 1051, 77 L.Ed. 2d at 1221.

As soon as the search of the passenger area of the car revealed the .38 caliber pistol and the officers determined that it had been stolen, they had probable cause to arrest defendant, without a warrant, for possession of stolen property in violation of G.S. 14-71.1. See G.S. 15A-401(b)(2). Incidental to his lawful arrest, the officers were entitled to conduct a warrantless search of his person. *State v. Hardy*, 299 N.C. 445, 263 S.E. 2d 711 (1980). Neither the pistol, the currency, nor the sweater were obtained by the officers in violation of defendant's Fourth Amendment rights. His first assignment of error is overruled.

[2] By his second argument, defendant contends that his prosecution for robbery with a firearm was barred by his earlier acquittal of the charge of possession of a firearm by a felon. He contends that his acquittal of that offense determined the issue of his possession of a firearm on 10 December 1984 in his favor so as to collaterally estop the State from proving that he committed a robbery with the use of a firearm. We disagree.

The doctrine of collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 25 L.Ed. 2d 469, 475, 90 S.Ct. 1189, 1194 (1970). The prin-

ciple applies to criminal as well as civil cases and has been held to be a part of the constitutional guarantee against double jeopardy provided by the Fifth Amendment, enforceable against the states through the Fourteenth Amendment. *Id.* The North Carolina Supreme Court has held that collateral estoppel, as applied to a criminal prosecution, "precludes the state from relitigating in a subsequent prosecution any issue *necessarily* decided in favor of the defendant in the former acquittal." *State v. McKenzie*, 292 N.C. 170, 175, 232 S.E. 2d 424, 428 (1977) (emphasis original).

In *Ashe v. Swenson, supra*, defendant was charged with six separate offenses of armed robbery, all arising out of a single incident in which six participants in a poker game were robbed. The prosecution proceeded to trial on one charge, the robbery of one of the victims. Defendant Ashe was acquitted. Several weeks later, Ashe was brought to trial again, this time for the robbery of another of the participants in the poker game. The result of the second trial was a conviction. The Supreme Court reversed his conviction, holding that the "single rationally conceivable issue in dispute before the jury" in the first trial was Ashe's identity as a perpetrator of the robbery. The jury having resolved that issue in defendant's favor, the State was precluded from relitigating the issue in the second trial. *Id.* at 445, 25 L.Ed. 2d at 476, 90 S.Ct. at 1195.

The present case may be distinguished from *Ashe*. In *Ashe*, the State was solely responsible for the consecutive trials. In the present case, defendant moved to sever the charges, contending that a joint trial of the two charges would unduly prejudice him since the charge of possession of a firearm by a felon would require proof of a previous conviction of common law robbery. The State procured both indictments before placing defendant on trial for either charge and made no effort to use one of the charges as a "dry run" for the other. *See Ashe, supra.* In both *Jeffers v. United States*, 432 U.S. 137, 53 L.Ed. 2d 168, 97 S.Ct. 2207, *reh'g denied*, 434 U.S. 880, 54 L.Ed. 2d 164, 98 S.Ct. 241 (1977) and *Ohio v. Johnson*, --- U.S. ---, 81 L.Ed. 2d 425, 104 S.Ct. ---, *reh'g denied*, --- U.S. ---, 82 L.Ed. 2d 915, --- S.Ct. --- (1984), the Supreme Court rejected claims of double jeopardy where separate, rather than consolidated, proceedings were held solely as a result of the defendant's efforts. "[W]here the State has made no effort to prosecute the charges seriatim, the considerations of

double jeopardy protection implicit in the application of collateral estoppel are inapplicable." *Ohio v. Johnson, supra* at --- n. 9, 81 L.Ed. 2d at 434, 104 S.Ct. at ---.

No error.

Judges PHILLIPS and PARKER concur.