STATE OF NORTH CAROLINA v. JOHN ANTHONY DAVIS

No. 8610SC1202

(Filed 2 June 1987)

1. Property § 4.2 — willful damage to real property — water damage to museum —
   sufficiency of evidence
   Evidence was sufficient to support defendant's conviction for willful
   damage to real property in violation of N.C.G.S. § 14-127 where it would per-
   mit the inference that defendant put paper towels in a toilet intending to
   create a serious water problem in the N.C. Art Museum, and damage to the
   toilet and water damage to the floor of the museum were natural and
   foreseeable consequences of clogging the constantly running toilet.

---
**State v. Davis**
---

2. **Property § 4.2— damage to article in art museum—insufficiency of evidence of cause of damage**

   Evidence was insufficient to support defendant's conviction for willful damage to an art object deposited in a museum where the amount of damage exceeds $50, since there was no evidence as to the condition of the tapestry allegedly damaged by defendant immediately prior to the date of the offense, and the mere fact that the tapestry was wet on the date in question was insufficient to support a finding beyond a reasonable doubt that defendant's act in putting paper towels in a toilet caused tideline damage to the tapestry. N.C.G.S. § 14-398.

3. **Criminal Law § 101.2— order permitting jury view—defendant not prejudiced**

   There was no merit to defendant's contention that an order permitting a jury view was fatally defective because it failed to include an instruction to the officer escorting the jury that no one was to be allowed to communicate with the jury, since the order was drafted jointly by the district attorney and defense counsel, was entered with only a general objection to the jury view itself, and contained sufficient precautionary language to insure that defendant's right to an impartial jury was not impaired.

4. **Criminal Law § 101.3— method of conducting jury view—defendant not prejudiced**

   Defendant was not unduly prejudiced by the conduct of the jury view because the press was allowed to be present, the members of the press were introduced to the jury, and jurors were allowed to ask questions.

   Chief Judge HEDRICK concurring in the result in part and dissenting in part.

APPEAL by defendant from *Preston, Judge.* Judgment entered 22 April 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 4 May 1987.

Defendant was indicted in case number 85CRS47980 for a violation of G.S. 14-398, which makes it a Class H felony to "willfully or maliciously or wantonly write upon, cut, tear, deface, disfigure, soil, obliterate, break or destroy . . . any . . . object of art or curiosity deposited in a . . . museum . . ." where the amount of damage done exceeds $50.00. Defendant was also indicted, in case number 85CRS47981, for the misdemeanor of willful and wanton damage to real property, a violation of G.S. 14-127. The State contended that defendant, a security guard at the North Carolina Museum of Art, angered by a job demotion, deliberately stopped up a toilet in the women's rest room at the museum, causing it to overflow. According to the State, the water caused damage to floors and carpets in the museum, as well as leaving a tideline on

an Eighteenth Century French tapestry stored in the basement of the museum.

Defendant pleaded not guilty and was tried by a jury. During the trial the judge, over defendant's objection, allowed the State's motion for a jury view. The local press was allowed to attend the proceedings held at the museum and individual jurors were allowed to ask questions during the jury view.

Defendant's motion to dismiss the charges was denied and defendant was found guilty by the jury of both charges. Judge Preston consolidated the convictions for judgment and sentenced defendant to three years' imprisonment, suspended on condition of payment of $9,929.65 in restitution to the museum. Defendant appeals.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Laura E. Crumpler for the State.*

*James R. Fullwood for defendant-appellant.*

PARKER, Judge.

Defendant's primary contention on this appeal is that the evidence presented by the State was insufficient to convince a rational trier of fact of defendant's guilt beyond a reasonable doubt and that his motion to dismiss the charges against him should, therefore, have been granted. The well-established test to be applied in ruling on a defendant's motion to dismiss is whether the State has produced substantial evidence of each and every element of the offense charged or a lesser included offense, and substantial evidence that the defendant committed the offense. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The evidence is to be viewed in the light most favorable to the State, giving the State the benefit of every reasonable inference which can be drawn from the evidence. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971).

When so viewed, the evidence presented at trial tended to show that on the date of the alleged offense, 25 May 1985, defendant was employed as a security guard at the N.C. Museum of Art. On that date, which was a Saturday, defendant came on duty at 3:30 p.m. The museum was open on Saturday, and was to be closed on Sunday and Monday for a holiday. At around 3:55 p.m.,

security guard Jeanette Stewart discovered that a toilet in the women's rest room on the entry level was continuously flushing. The water was just "going around, going down the drain," and was not overflowing onto the floor. Ms. Stewart reported the problem to her supervisor, who told her to periodically check the toilet to make sure it was not overflowing. She checked several times during the remainder of her shift and found the toilet was still flushing but not overflowing. The supervisor decided that, as the water was not overflowing, the toilet could wait until regular museum hours on Tuesday to be repaired. Defendant was informed of the problem with the toilet and of the decision to just let it run until Tuesday.

At 5:30 p.m., the museum closed. Ms. Stewart went off duty and security guard Sandra Roberson reported for duty. The museum building was secured and by 6:20 p.m. defendant and Ms. Roberson were the only people in the museum. At 7:25 p.m., defendant began a routine patrol of the museum. Ms. Roberson remained at the security desk and followed defendant's progress through the museum by monitoring the museum's sophisticated alarm system of motion and heat detectors. Defendant radioed Ms. Roberson from the women's rest room, asked her if she could hear the water running and commented on the amount of water being wasted. Ms. Roberson then noticed that it took a longer time than normal for defendant to get from the women's room to the next motion detector. When defendant returned from his round, he insisted that Ms. Roberson make the following entry in the log exactly as he dictated it:

> While on patrol Officer Davis discovered the water overflow in the ladies room. It was discussed earlier with Hann, and he said not to notify engineering staff until Tuesday morning. Per; Ms. Stewart.

At about 9:35 p.m., Ms. Roberson began her patrol. She heard a sound like running water and discovered "a whole lot of damn water coming down" from the balcony on the entry level overlooking the main gallery. Ms. Roberson called maintenance personnel who instructed her on how to turn off the water to the toilet. Museum employees were also called in to help clean up the water. The water had flowed onto several levels of the museum, staining carpets and shorting electrical outlets, which burned the

carpets and became inoperative. The water also flowed into a basement storage room and onto an Eighteenth Century French tapestry, which was rolled up on the floor. When employees began to arrive to help clean up, defendant signed out and left the museum before his shift was over. Defendant was later asked by his supervisor to fill out a report on the incident. He refused and was discharged.

A maintenance crew dismantling the toilet for repair discovered that the outflow pipe was blocked by an eight-inch stack of paper towels. According to the State's expert witness, the chief engineer at the museum, this stack of towels was sufficient to completely block the outflow pipe. The expert testified that the running toilet flowed at a rate of approximately thirty to sixty gallons of water per minute and that once the outflow pipe became clogged, the water probably began to overflow the toilet in a matter of seconds.

Defendant contended at trial that at the time he made his 7:25 p.m. rounds the toilet was overflowing and the floor drain was handling the water overflow adequately. The chief engineer testified that if the continuously flushing toilet were overflowing, the floor drain could not handle the volume of water.

Defendant was charged with violations of G.S. 14-127 and G.S. 14-398. These statutes read:

§ *14-127.  Willful and wanton injury to real property.*

If any person shall willfully and wantonly damage, injure or destroy any real property whatsoever, either of a public or private nature, he shall be guilty of a misdemeanor and shall be punished by fine or imprisonment or both, in the discretion of the court.

§ *14-398.  Theft or destruction of property of public libraries, museums, etc.*

Any person who shall steal or unlawfully take or detain, or willfully or maliciously or wantonly write upon, cut, tear, deface, disfigure, soil, obliterate, break or destroy, or who shall sell or buy or receive, knowing the same to have been stolen, any book, document, newspaper, periodical, map, chart, picture, portrait, engraving, statue, coin, medal, ap-

paratus, specimen, or other work of literature or object of art or curiosity deposited in a public library, gallery, museum, collection, fair or exhibition, or in any department or office of State or local government, or in a library, gallery, museum, collection, or exhibition, belonging to any incorporated college or university, or any incorporated institution devoted to educational, scientific, literary, artistic, historical or charitable purposes, shall, if the value of the property stolen, detained, sold, bought or received knowing same to have been stolen, or if the damage done by writing upon, cutting, tearing, defacing, disfiguring, soiling, obliterating, breaking or destroying any such property, shall not exceed fifty dollars ($50.00), be guilty of a misdemeanor and upon conviction shall be fined or imprisoned in the discretion of the court. If the value of the property stolen, detained, sold or received knowing same to have been stolen, or the amount of damage done in any of the ways or manners hereinabove set out, shall exceed the sum of fifty dollars ($50.00), the person committing same shall be punished as a Class H felon.

Clearly, these statutes require, as an essential element of the offenses set forth, a showing that the person charged "willfully" or "wantonly" caused the damage to real property or an object of art. The words "willful" and "wanton" have substantially the same meaning when used in reference to the requisite state of mind for a violation of a criminal statute. *State v. Williams*, 284 N.C. 67, 199 S.E. 2d 409 (1973). "Willful" as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law. *State v. Arnold*, 264 N.C. 348, 141 S.E. 2d 473 (1965). "Willfulness" is a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular case. *Id.*

[1]   The evidence, when viewed in the light most favorable to the State, was sufficient to allow the jury to infer that defendant put the paper towels in the toilet intending to create a serious water problem. It is not necessary for a person to know that he is breaking the law for an act to be "willful." *State v. Coal Co.*, 210 N.C. 742, 188 S.E. 412 (1936). Further, a person is presumed to intend the natural and foreseeable consequences of his unlawful acts. *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964).

Damage to the toilet (as an attached fixture, part of the real property, *see generally* Annot., 52 A.L.R. 2d 222 (1957)) and water damage to the floor of the museum were natural and foreseeable consequences of clogging the constantly-running toilet. Therefore, we affirm the conviction for willful damage to real property in violation of G.S. 14-127.

[2] With respect to the conviction for violation of G.S. 14-398, the evidence was not in our view sufficient to support the necessary finding that defendant's act was the proximate cause of the damage to the tapestry. The State presented no evidence as to the condition of the tapestry immediately before 25 May 1985. A photograph showing the tapestry without the tideline was tendered into evidence, but no witness testified as to when the photograph was made. This photograph was an item in the conservation file containing information on each art object at the museum. The photograph does not depict the linen border which according to the evidence was sewn on in 1978. The most recent condition report in the file was dated January 1980. Further, the evidence was uncontradicted that the tapestry was lying on the floor rolled up in a storage room located directly under the rest room with the malfunctioning toilet. Other objects stored in this room did not get wet. The State's evidence showed that water ran into the room because the seal around the pipe for the floor drain in the rest room had not been properly caulked. This crack permitted water to seep down the outside of the pipe. The record is devoid of any evidence as to when the tapestry was stored in this room and when it was last unrolled prior to 25 May 1985. In our view, considering all the evidence in the light most favorable to the State, the mere fact that this tapestry was wet on 25 May 1985 is not sufficient to support a finding beyond a reasonable doubt that defendant's act in putting the towels in the toilet caused the tideline damage to the tapestry. Evidence as to the condition of the tapestry prior to the flooding was necessary to establish all material elements of the offense. In *In re Meaut*, 51 N.C. App. 153, 275 S.E. 2d 200 (1981), respondents were observed throwing rocks at a carload of motor vehicles on a train; when the train stopped two vehicles were damaged. This Court per Judge (now Justice) Whichard stated:

> The testimony of the State's witness tended to show that the
> train in question was en route from Rocky Mount to Hope

Mills. The witness testified: "I did not personally inspect the cars in Rocky Mount. A member of our department told me that the cars were in good shape when they were in Rocky Mount." This testimony was properly stricken, upon respondents' motion, as hearsay. Without this testimony there was no evidence before the court as to the condition of the automobiles prior to their arrival at the *locus in quo,* and such evidence was an essential foundation to a permissible inference that the damage resulted from the acts of respondents rather than from some other cause.

51 N.C. App. at 155-56, 275 S.E. 2d at 202.

The trial court erred in denying defendant's motion to dismiss the felony charge against him. Our ruling on this issue makes discussion of defendant's assignments of error regarding the proper measure of damage to the tapestry unnecessary as those contentions relate to the felony only.

Defendant also assigns error to the trial court's order allowing a jury view at the art museum and to the court's conduct of the jury view itself. Under G.S. 15A-1229(a), the decision to permit a jury view is vested in the discretion of the trial judge. The decision will not be disturbed absent an abuse of discretion. *See State v. Wilson,* 313 N.C. 516, 330 S.E. 2d 450 (1985). Defendant has shown no abuse of discretion by the trial judge in permitting the view.

[3] Defendant also contends that the order permitting the view was fatally defective as it failed to include an instruction to the officer escorting the jury that no one is to be allowed to communicate with the jury. *See* G.S. 15A-1229(a). This contention is without merit. The order was drafted jointly by the district attorney and defense counsel and was entered with only a general objection to the jury view itself. While not reciting the language of the statute verbatim, the order did contain sufficient precautionary language to insure that defendant's right to an impartial jury was not impaired, including orders that the jury be accompanied by two deputies, that the jurors not be allowed to talk among themselves and that no one be allowed to speak with the jury. This order was sufficient to comply with the requirements of G.S. 15A-1229(a) and the assignment of error is overruled.

[4] Defendant further contends that he was unduly prejudiced by the conduct of the jury view as the press was allowed to be present and the members of the press were introduced to the jury. Criminal trials in North Carolina are open to the press and the public. N.C. Const. art. I, § 24. Defendant argues that by allowing the press to attend the jury view and by introducing the members of the press to the jurors, the trial judge unduly prejudiced him by emphasizing the highly publicized nature of the trial and by detracting from the decorum of the proceedings. Although conditions were less than ideal for court proceedings, the trial judge kept the press quiet and away from the jury and gave adequate instructions to the jury concerning the publicity surrounding the trial.

Finally, defendant contends that by allowing individual jurors to ask questions at the jury view, the trial court committed prejudicial error. We disagree. The jurors were allowed to state their questions, which were duly recorded by the court reporter. The questioning was tightly controlled and conducted in such a way as to fully protect defendant's right to a fair trial. The trial judge asked each attorney if there were any objection to the question, and defense counsel never voiced an objection. Defendant has failed to demonstrate any prejudice resulting from the manner in which the jury view was conducted.

In summary, defendant's conviction in 85CRS47980, willful damage to an object of art, is vacated. We find no prejudicial error in defendant's conviction for willful damage to real property, and the case is remanded to the Superior Court for entry of judgment on the misdemeanor conviction.

No. 85CRS47980 — reversed.

No. 85CRS47981 — no error.

Remanded for entry of judgment.

Judge EAGLES concurs.

Chief Judge HEDRICK concurs in the result in part and dissents in part.

Chief Judge HEDRICK concurring in the result in part and dissenting in part.

I concur with the majority decision reversing the conviction in 85CRS47980 wherein defendant was convicted of willfully damaging an object of art in violation of G.S. 14-398, but I do not agree with the majority's reasoning. I dissent from the majority decision finding no error in the case wherein defendant was convicted in 85CRS47981 of willfully damaging real property in violation of G.S. 14-127. In this case, I do not agree with the majority's reasoning or result.

In my opinion, the majority overlooks the significance of the word "willful" as used in both statutes. "The word wilful, used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing the act purposely and deliberately, indicating a purpose to do it without authority — careless whether he has the right or not — in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute." *In re Adoption of Hoose*, 243 N.C. 589, 594, 91 S.E. 2d 555, 558 (1956) (citation omitted). "Willful" as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law. *State v. Brackett*, 306 N.C. 138, 291 S.E. 2d 660 (1982).

The evidence in these cases shows nothing more than that defendant had the "intention to do a thing"; that is, that he intended to put the paper towels in the toilet. While the evidence is sufficient to raise an inference that defendant put the paper towels in the toilet "purposely and deliberately" it does not follow that this act was in violation of law. There is nothing in the evidence in these cases to show that defendant willfully or wantonly damaged the tapestry or the art museum. Although the jury could find from the evidence that defendant's act in putting the towels into the toilet proximately caused the damage to the art and the museum, the evidence falls short of showing any willfulness to do such damage and thus the record fails to disclose any criminal intent upon the part of defendant within the meaning of these criminal statutes.

In *State v. Maines*, 301 N.C. 669, 273 S.E. 2d 289 (1981), the defendant was tried and convicted of felonious breaking and en-

tering and felonious larceny. The defendant had been arrested after he was seen driving an automobile with the owner and two other people riding as passengers, wherein was found a blue coat, one of the items which had been stolen from the property broken into.

The defendant's conviction was based on the theory that since the evidence disclosed that the defendant was the driver of the vehicle it raised the inference that he was in constructive possession of recently stolen goods, and since he was in possession of recently stolen goods, he was the thief. In writing for the Supreme Court, Justice Huskins said, "We hold this criminal conviction cannot stand because it is based on stacked inferences. 'Inference may not be based on inference. Every inference must stand upon some clear or direct evidence, and not upon some other inference or presumption.'" *Id.* at 676, 273 S.E. 2d at 294 (citation omitted).

The convictions in these cases cannot stand, because they are based on stacked inferences, the first inference being that defendant willfully put the paper towels in the toilet and the second inference, stacked on the first, being that defendant thereby willfully or wantonly damaged the tapestry and the art museum. There is no direct evidence giving rise to an inference that defendant willfully or wantonly damaged an object of art or real property.

In its opinion the majority correctly states, "It is not necessary for a person to know that he is breaking the law for an act to be 'wilful.' *State v. Coal Co.*, 210 N.C. 742, 188 S.E. 412 (1936). Further, a person is presumed to intend the natural and foreseeable consequences of his *unlawful* acts. *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964)." (Emphasis mine.) While the foregoing statements are legally correct, they have no application whatsoever in the present cases, because it is not unlawful to put paper towels into a toilet. The problem in these cases, in my opinion, is simply that the State has failed to offer any evidence of criminal intent upon the part of defendant to damage the art or real property. Criminal intent is lacking in these cases because the State has failed to offer any direct evidence that defendant willfully damaged the tapestry or the real property. Had the act of putting the paper towels in the toilet been a criminal act, the

criminal intent embodied in the violation of that law would carry over and provide the criminal intent necessary to show a violation of the statutes making it a crime to willfully damage an object of art or real property. It is not a violation of law to put paper towels in a toilet, even if the intent is to cause the toilet to overflow. Such an act is or may be fatuous, negligent or wrongful, making the perpetrator of that act liable in damages proximately resulting from such act. Damage willfully done to the toilet would be a violation of G.S. 14-127, but, contrary to the majority's assertion, there is no evidence in this case that defendant willfully damaged the toilet by putting paper towels into it. The damage done resulted not to the toilet, but to the electrical fixtures in the museum and to the tapestry.

I vote to reverse both cases.