STATE OF NORTH CAROLINA v. AKEEM YOUNG

No. COA01-109

(Filed 5 February 2002)

**1. Search and Seizure— traffic stop—probable cause—driving wrong way on a one-way street**

The objective facts provided probable cause for a traffic stop which eventually led to an armed robbery prosecution where defendant made a three point turn after entering a one-way street in the wrong direction.

**2. Search and Seizure— investigatory stop—based on tip**

An investigatory stop was justified based upon a reasonable suspicion that defendant was involved in robberies of a Western Union where an officer received a tip; the officer had previous knowledge of the circumstances of the robberies which allowed him to corroborate the information provided by the informant; and the officer observed that defendant generally met the description of the perpetrator provided by witnesses to the robberies.

**3. Search and Seizure— traffic stop—permissible scope**

A traffic stop which eventually led to an armed robbery prosecution did not exceed its permissible scope where the officer did not request defendant's license and registration, defendant's behavior was not typical in that he came toward the patrol car quickly after the stop, defendant made a statement which the officer knew to be false, and the officer was aware that defendant could be an armed robbery suspect and that an anonymous caller had stated that defendant was armed and dangerous. At any rate, the evidence which defendant sought to suppress came from a consensual search of the vehicle rather than from the pat-down following the stop.

Judge GREENE concurring.

Appeal by defendant from judgments entered 22 September 1999 by Judge Steve A. Balog in Orange County Superior Court. Heard in the Court of Appeals 8 January 2002.

**STATE v. YOUNG**

[148 N.C. App. 462 (2002)]

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Marc D. Bernstein, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

HUNTER, Judge.

Akeem Akbar Young ("defendant") appeals the denial of his motion to suppress resulting in defendant's entry of a plea of guilty to two counts of robbery with a dangerous weapon. We affirm the denial of defendant's motion to suppress.

Evidence presented at the hearing on defendant's motion tended to establish that on 5 October and 19 October 1998, a Western Union located at the Carr Mill Mall in Carrboro, North Carolina, was robbed. The first robbery occurred on a Monday, and the perpetrator used a handgun to facilitate the robbery. The perpetrator was described as a black male of medium build, approximately five feet eight inches tall, with a dark complexion and some facial hair. The 19 October 1998 robbery also occurred on a Monday, and the perpetrator was again described as a black male of medium build, approximately five feet eight inches tall and weighing 150 pounds, approximately late twenties to thirty years of age, and with light facial hair. He was described as wearing a denim jacket or shirt. The perpetrator used a knife to facilitate the robbery.

On the following Monday, 26 October 1998, a call was received by the 911 call center for the Carrboro Police Department. The female caller would not identify herself, stating she did not want to endanger her life or her child's life, but said she knew who had robbed the Western Union on 5 October and 19 October 1998. She stated the man was currently in the vicinity of a Wendy's restaurant near the Western Union and was driving a white 1998 Buick Century. The caller described the man as a black male, approximately five feet five inches tall, weighing approximately 155 pounds, and with light facial hair and a dark complexion. The suspect was described as wearing a blue denim shirt over a white undershirt, black jeans, and yellow and gray tennis shoes. The caller stated that the man was very dangerous and was currently armed with a pistol.

Officer Paul Atherton of the Carrboro Police Department received the information provided by the anonymous caller. He was familiar with the robberies that had occurred at the Western Union. Officer Atherton drove to the vicinity of the Wendy's and parked his

vehicle in a parking lot directly across from the restaurant. While there, Officer Atherton observed a white sedan enter the Wendy's parking lot. He then drove to the Wendy's in his unmarked patrol car, but the white sedan was not there when he arrived. Officer Atherton circled the block, and as he returned to the Wendy's, he observed a late model white Buick Century parked in a parking lot across the street from the Wendy's to the east. Officer Atherton parked his vehicle approximately fifty yards from the Buick. Within approximately one minute, he observed defendant, a black male fitting the description of the suspect, walk to the white Buick and enter the car. Officer Atherton observed that defendant was wearing a blue denim shirt over a white shirt, dark pants, and tennis shoes with yellow on them. He testified defendant appeared to be approximately five feet eight inches tall.

Defendant pulled out of the parking lot and began traveling north on Greensboro Street. Officer Atherton followed defendant. Just after defendant passed Carr Mill Mall, defendant made a left turn onto East Poplar Street, a one-way street. Defendant began driving the wrong way down East Poplar Street, which was clearly marked with both a "One-Way" sign and a "Do Not Enter" sign. Shortly after making the turn, defendant stopped his vehicle and executed a three-point turn on East Poplar Street. Defendant then exited East Poplar Street and proceeded south on Greensboro Street, the opposite direction from which he had previously been traveling.

Officer Atherton activated his blue lights and made a U-turn to get behind defendant. Defendant pulled into a parking lot, and Officer Atherton followed. Officer Atherton testified that as soon as he pulled in behind defendant, defendant exited his vehicle and quickly walked towards Officer Atherton's patrol car before he could exit. Officer Atherton stated that he exited his vehicle as soon as he could and instructed defendant to "[h]old on." Defendant stopped and began clutching his chest, stating that he needed an ambulance because he had just been robbed. Officer Atherton asked defendant where he had been robbed, and defendant responded he had been robbed at the Old Well Apartments near the BP gas station. Officer Atherton testified that he knew "right then" defendant was lying, and he proceeded to execute a "very quick cursory search" of defendant for weapons.

Defendant did not continue to talk about having been robbed, and "either avoided or ignored" Officer Atherton's questions regarding the alleged robbery. Another officer who arrived at the scene

asked defendant if he could search his vehicle. Defendant consented, and hit a remote button which opened the trunk. The officers recovered a pistol from underneath the driver's seat. When defendant could not produce a concealed weapons permit, he was informed that he was being placed under arrest for carrying a concealed weapon. Defendant resisted the arrest and a struggle ensued, during which a stainless steel gun magazine fell to the ground. A Western Union money order linked to one of the robberies was later recovered from defendant's shirt pocket.

On 5 January 1999, defendant was indicted for two counts of robbery with a dangerous weapon. On 1 September 1999, defendant moved to suppress evidence gathered in connection with his arrest on 26 October 1998. Defendant did not testify at the hearing. On 22 September 1999 the trial court denied defendant's motion. He thereafter entered a plea of guilty to the two counts in exchange for the dismissal of two additional charges. Defendant was sentenced to two consecutive terms of fifty-one to seventy-one months in prison. He appeals.

**[1]** Defendant assigns error to the denial of his motion to suppress, arguing that his stop, detention, and arrest on 26 October 1998 violated his Fourth Amendment right to be free from unreasonable search and seizure, and therefore, any evidence recovered as a result must be suppressed. We disagree, and affirm the trial court's denial of defendant's motion.

"It is well established that the standard of review in evaluating a trial court's ruling on a motion to suppress is that the trial court's findings of fact ' "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." ' " *State v. Buchanan*, 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (citations omitted). "This deference is afforded the trial judge because he is in the best position to weigh the evidence, given that he has heard all of the testimony and observed the demeanor of the witnesses." *State v. Hughes*, 353 N.C. 200, 207, 539 S.E.2d 625, 631 (2000).

Defendant first argues Officer Atherton's traffic stop of defendant was not legally justified on the basis of probable cause that defendant had violated N.C. Gen. Stat. § 20-165.1 (1999). That statute provides:

In all cases where the Department of Transportation has heretofore, or may hereafter lawfully designate any highway or

other separate roadway, under its jurisdiction for one-way traffic and shall erect appropriate signs giving notice thereof, it shall be unlawful for any person to willfully drive or operate any vehicle on said highway or roadway except in the direction so indicated by said signs.

N.C. Gen. Stat. § 20-165.1. Defendant argues that although Officer Atherton testified he stopped defendant based upon defendant's driving the wrong way on a one-way street, Officer Atherton did not have probable cause to believe defendant did so "willfully."

The trial court found that "Officer Atherton had probable cause to stop the defendant for the commission of a traffic violation in the officer's presence, a violation of G.S. 20-165.1." Although the trial court's findings of fact are generally deemed conclusive where supported by competent evidence, "a trial court's conclusions of law regarding whether the officer had reasonable suspicion [or probable cause] to detain a defendant is reviewable *de novo.*" *State v. Kincaid,* 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001).

We emphasize that in examining the legality of the stop at issue, Officer Atherton's subjective reasoning is irrelevant, and the proper inquiry is whether the objective facts support a finding that probable cause existed to stop defendant. *See State v. McClendon,* 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999) (officer's subjective motive for traffic stop immaterial; issue is whether objective evidence presented at suppression hearing supports finding that stop was legal); *State v. Peck,* 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982) (" '[t]he scope of the Fourth Amendment is not determined by the subjective conclusion of the law enforcement officer' " (citation omitted)).

" 'Willful' as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law." *State v. Davis,* 86 N.C. App. 25, 30, 356 S.E.2d 607, 610 (1987) (citing *State v. Arnold,* 264 N.C. 348, 141 S.E.2d 473 (1965)). " 'Willfulness' is a state of mind which is seldom capable of direct proof, but which must be inferred from the circumstances of the particular case." *Id.* (citation omitted).

We agree with the trial court that the objective evidence reveals the existence of probable cause to stop defendant for a violation of N.C. Gen. Stat. § 20-165.1. Although the evidence in the present case could suggest defendant did not realize he had turned the wrong way

into a one-way street, the evidence is equally supportive of a finding that defendant used the one-way street to turn around and begin to proceed in a southerly direction on Greensboro Street. The evidence established that defendant had been traveling north on Greensboro Street, and that shortly after he passed the Carr Mill Mall and the Western Union, he executed an illegal turn onto East Poplar Street, did a three-point turn on that street, and then proceeded south on Greensboro Street in the direction from which he came. The evidence establishes the existence of probable cause, based on objective facts, that defendant violated N.C. Gen. Stat. § 20-165.1, thereby permitting Officer Atherton to stop defendant. *See, e.g., McClendon*, 350 N.C. at 636, 517 S.E.2d at 132 (violation of traffic statutes constitutes probable cause to stop vehicle).

[2] In any event, we also hold Officer Atherton was justified in initiating an investigatory stop of defendant based upon a reasonable suspicion that defendant was involved in the robberies of the Western Union. "An 'investigatory stop must be justified by "a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." ' " *Kincaid*, 147 N.C. App. at 97, 555 S.E.2d at 297-98 (citations omitted). "The level of suspicion required for an investigatory stop . . . is lower than what is required for a seizure based on probable cause, which is a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity." *State v. Schiffer*, 132 N.C. App. 22, 26, 510 S.E.2d 165, 167, *appeal dismissed and disc. review denied*, 350 N.C. 847, 539 S.E.2d 5 (1999). In determining whether reasonable suspicion exits, a trial court must consider the totality of the circumstances. *Kincaid* at 97, 555 S.E.2d at 298.

"An anonymous tip can provide reasonable suspicion as long as it exhibits sufficient indicia of reliability." *Hughes*, 353 N.C. at 207, 539 S.E.2d at 630. An officer is entitled to ". . . 'rely upon information received through an [anonymous] informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.' " *State v. Bone*, 354 N.C. 1, 10, 550 S.E.2d 482, 488 (2001) (citation omitted).

In *Bone*, our Supreme Court held that the detective sufficiently corroborated information provided by an anonymous informant that the defendant was the perpetrator of a previous murder. *Id.* at 11, 550 S.E.2d at 488. The informant provided police with the defendant's name and physical description, and stated that he had entered the

STATE v. YOUNG

[148 N.C. App. 462 (2002)]

victim's apartment through a window and punched the victim in the face, causing her to bleed from the ears. *Id.* at 6, 550 S.E.2d at 485. The detective was able to verify that the information provided by the informant was correct. *Id.* at 11, 550 S.E.2d at 488. In addition, when the detective went to question the defendant, he observed that the defendant was wearing the same type of athletic shoes which the detective knew the murderer to have worn during the crime. *Id.*

In this case, as in *Bone*, Officer Atherton had previous knowledge of the circumstances surrounding the robberies of the Western Union. Not only was Officer Atherton able to verify that the information provided by the informant regarding defendant's description, clothing, vehicle, and location was correct, but he was able to corroborate the information based upon his previous knowledge of the Western Union robberies. Officer Atherton viewed defendant entering his vehicle near the Wendy's parking lot, and observed that defendant generally met the description of the perpetrator provided by witnesses to both robberies. The anonymous tip was therefore sufficiently reliable to allow Officer Atherton to conduct an investigatory stop of defendant. In so holding, we note that anonymous tips are one of the most important investigatory tools used by law enforcement to prevent and solve crimes. Only when their use has been unreasonable should our courts restrict their use. This assignment of error is overruled.

[3] In his remaining argument, defendant contends that even if Officer Atherton had legal justification to stop defendant, the detention exceeded the permissible scope allowed for such a stop. Again, we disagree. Defendant argues the scope of a valid traffic stop encompasses a request for a driver's license and registration, a computer check, and the issuance of a citation, and that Officer Atherton never pursued the traffic violation upon stopping defendant. While the evidence is clear that Officer Atherton did not conduct defendant's stop in the routine fashion of first requesting defendant's license and registration, defendant's behavior following the stop was clearly atypical. Officer Atherton testified he intended to conduct defendant's stop as a routine traffic stop, but that before he could even exit his patrol car, defendant had exited his own vehicle and was coming towards him with some speed. Officer Atherton testified it is "very, very rare to have somebody come out of the vehicle and approach you at the speed [defendant] did that morning." He testified defendant's unusual behavior caused him to "heighten [his] sense of safety."

STATE v. YOUNG

[148 N.C. App. 462 (2002)]

Officer Atherton further testified that he did not initially ask defendant for his license and registration because defendant first began stating that he needed an ambulance because he had just been robbed, which statement Officer Atherton knew to be false based on his observations of defendant prior to the stop. Officer Atherton testified the events unfolded very quickly, and with the knowledge that defendant could be a suspect in an armed robbery and that an anonymous caller stated the suspect was very dangerous and currently armed, he conducted a limited pat-down of defendant for weapons.

"While a routine traffic stop 'does not justify in every instance a protective search for weapons,' an officer is 'permitted to conduct a "pat-down" for weapons once the defendant is outside the automobile . . . if the circumstances give the police reasonable grounds to believe that the defendant may "be armed and presently dangerous." ' " *State v. Hamilton,* 125 N.C. App. 396, 401, 481 S.E.2d 98, 101 (citations omitted) (holding defendant's behavior in reaching towards his left side before exiting vehicle sufficient to justify weapons frisk), *appeal dismissed and disc. review denied,* 345 N.C. 757, 485 S.E.2d 302 (1997); *see also State v. Pearson,* 348 N.C. 272, 275, 498 S.E.2d 599, 600 (1998) (following a stop, if an officer "reasonably believes that the person is armed and dangerous, the officer may frisk the person to discover a weapon or weapons"); *State v. Willis,* 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) (following stop, officer may conduct weapons frisk for self-protection " '[i]f, after the detention, [the investigating officer's] personal observations confirm his apprehension that criminal activity may be afoot and [] that the person may be armed . . . .' " (citation omitted)).

In *State v. Alston,* 82 N.C. App. 372, 376, 346 S.E.2d 184, 187 (1986), *affirmed,* 323 N.C. 614, 374 S.E.2d 247 (1988), this Court held the following evidence sufficient to warrant an articulable and objectively reasonable belief that the defendant was potentially dangerous: the defendant generally matched a description of a suspect who had committed a previous armed robbery; the defendant was driving a vehicle similar to that identified as being used by the perpetrator of the robbery; when the officer stopped the defendant, the defendant quickly got out of his vehicle and allowed it to roll back into the police car; and the officer observed that the defendant was " 'acting weird.' " *Id.; see also McClendon,* 350 N.C. at 637, 517 S.E.2d at 133 (defendant's responses to officer's questions following routine traffic stop sufficient to justify officer's suspicions that criminal activity afoot).

In the present case, Officer Atherton was justified in an objectively reasonable belief that defendant could be armed and potentially dangerous. Defendant matched a description from an anonymous caller as the perpetrator of two recent armed robberies, which description was consistent with robbery witnesses' descriptions of the robber. In any event, the pat-down of defendant did not yield the evidence which defendant sought to suppress. Rather, the search of defendant's vehicle which actually led to defendant's arrest based upon the discovery of the concealed weapon, was performed pursuant to defendant's consent. Defendant has not challenged the trial court's finding that he gave the officers permission to search his vehicle, and the finding is clearly supported by the evidence.

Taken as a whole, the evidence supports the trial court's findings of fact, and we hold these findings support the conclusion that defendant's stop, detention and arrest were within the permissible bounds of the Fourth Amendment. The trial court therefore did not err in denying defendant's motion to suppress evidence recovered as a result thereof.

Affirmed.

Judge TYSON concurs.

Judge GREENE concurs in a separate opinion.

GREENE, Judge, concurring.

I concur in the majority's opinion but write separately to address the proper application of the differing standards of probable cause and reasonable suspicion in the context of a traffic stop.

While there are instances in which a traffic stop is also an investigatory stop, warranting the use of the lower standard of reasonable suspicion, the two are not always synonymous. A traffic stop made on the basis of a readily observed traffic violation such as speeding or running a red light is governed by probable cause. *See, e.g., State v. McClendon*, 130 N.C. App. 368, 374, 502 S.E.2d 902, 906 (1998) (officer had probable cause to stop vehicle and issue citation for speeding and following too closely), *affirmed*, 350 N.C. 630, 517 S.E.2d 128 (1999); *State v. Hamilton*, 125 N.C. App. 396, 399, 481 S.E.2d 98, 100 (officer had probable cause to stop the vehicle for the purpose of issuing seat belt citations because he had observed that both the

STATE v. YOUNG

[148 N.C. App. 462 (2002)]

driver and the defendant were not wearing seat belts), *disc. review denied*, 345 N.C. 757, 485 S.E.2d 302 (1997); *see also* N.C. Gen. Stat. § 15A-302(b) (1999) (an officer may issue a citation to any person who he has probable cause to believe has committed a misdemeanor or infraction). Probable cause is "a suspicion produced by such facts as indicate a fair probability that the person seized has engaged in or is engaged in criminal activity. *State v. Schiffer*, 132 N.C. App. 22, 26, 510 S.E.2d 165, 167, *disc. review denied*, 350 N.C. 847, 539 S.E.2d 5 (1999). On the other hand, a traffic stop based on an officer's mere *suspicion* that a traffic violation is being committed, but which can only be verified by stopping the vehicle, such as drunk driving or driving with a revoked license, is classified as an investigatory stop, also known as a *Terry* stop. *See, e.g., State v. Kincaid*, 147 N.C. App. 94, 97-98, 555 S.E.2d 294, 297-98 (2001) (officer had reasonable suspicion to stop the defendant for a revoked license based on his knowledge of the defendant); *Schiffer*, 132 N.C. App. at 26, 510 S.E.2d at 167 (deputy had reasonable suspicion to stop the defendant after noticing Florida tags and window tinting which the deputy believed was darker than permitted under North Carolina law). Such an investigatory-type traffic stop is justified if the totality of circumstances affords an officer reasonable grounds to believe that criminal activity may be afoot. *State v. Peck*, 305 N.C. 734, 741, 291 S.E.2d 637, 641 (1982) (quoting *State v. Streeter*, 283 N.C. 203, 210, 195 S.E.2d 502, 507 (1973)).

In this case, because Officer Atherton observed defendant entering a one-way street the wrong way, in apparent violation of section 20-165.1, he needed probable cause in order to stop the vehicle. As noted by the majority, the facts in this case reveal probable cause. Because I agree with the majority's analysis as to all the issues, I concur in the opinion.