STATE OF NORTH CAROLINA v. HENRY LUTHER BROWN, III

No. COA08-1214

(Filed 18 August 2009)

**1. Arrest— probable cause—informant's corroborated information—surveillance information**

Officers had probable cause to arrest defendant prior to an illegal entry into his apartment, and the trial court did not err by denying defendant's motion to suppress his statements to deputies and the fruits thereof.

**2. Appeal and Error— record—index—required**

Sanctions were imposed upon appellate counsel for failure to include an index in the record on appeal.

Appeal by defendant from judgment entered 23 January 2008 by Judge Gregory A. Weeks in Cumberland County Superior Court. Heard in the Court of Appeals 20 April 2009.

*Glover & Petersen, P.A., by Ann B. Petersen, for defendant-appellant.*

*Attorney General Roy Cooper, by Assistant Attorney General K. D. Sturgis, for the State.*

STEELMAN, Judge.

Defendant's motion to suppress evidence was properly denied when an informant's anonymous tip was sufficiently corroborated by reliable and credible evidence, which established probable cause to arrest defendant.

## I. Factual and Procedural Background

On 14 December 2002, Sergeant Charlie Disponzio (Disponzio) of the Cumberland County Sheriff's Department was dispatched to the scene of a reported shooting at the Coliseum Motel on Highway 301 in Fayetteville, North Carolina. At approximately 7:10 p.m., Disponzio arrived at the scene and received a briefing from the first responding deputy. The victim was found dead lying on the floor of room 171, and witnesses reported to deputies that they saw two African-American males and an African-American female fleeing the area. Witnesses also noticed a white Pontiac Grand Am with factory rims and spoiler on the back, and a burgundy Nissan with tinted windows leaving the scene.

After the briefing, Disponzio examined the scene of the shooting. The victim appeared to have suffered multiple gunshot wounds, and shell casings littered the area. Victim's left pants pocket was partially turned inside out, and coins were on the floor below the pocket. Deputies found the victim's identification card in his pocket, but no money on his person. Otherwise, the room appeared to be clean and neat, and there were no signs of forced entry.

Eleven fired 9 mm caliber shell casings, five fired 9 mm caliber projectiles, and one unfired 9 mm caliber round were found in the room. All the casings in the room were 9 mm caliber, but appeared to be two different brands. Further investigation revealed the victim arrived in his black Jeep Cherokee, and a witness reported seeing an African-American female driving the Cherokee away from the motel.

On 15 December 2002 at approximately 1:30 a.m., the Cumberland County Sheriff's Office forwarded a call to Disponzio from an anonymous caller indicating he had information about a shooting. The caller asked if there had been a murder on Highway 301, and Disponzio answered "Yes." The caller said he knew who killed the man and then identified the persons involved in the murder as Chris Scott and his roommate Henry Brown (defendant). The caller further stated that the killing was over defendant's girlfriend, and the girlfriend set the whole thing up.

The caller identified the location of the shooting as the motel next to the "old Pavilion" club, which Disponzio recognized as the Coliseum Motel. Disponzio was told that the guns were thrown in a river, and the victim's Cherokee was parked behind a church on the east side of Fayetteville. The caller stated that the victim had been

shot numerous times, and the girlfriend had gone through the victim's pockets and taken some money. The caller told Disponzio that Scott and defendant lived in an apartment complex off of Highway 210 in Spring Lake, and their apartment was in building 911, apartment 102. The caller then agreed to meet with deputies at the Sheriff's Office, and upon arrival, the caller identified himself as Michael Williams (Williams).

At the Sheriff's Office, Disponzio learned from the victim's brother that he went to meet a female identified as "Khateefa" at a motel. At approximately 2:05 a.m., Disponzio left to reconnoiter the apartment while other deputies completed the interview of Williams. Upon entering the parking lot of the apartment building, Disponzio saw a white Pontiac Grand Am with a spoiler on the trunk, tinted windows, and factory rims located immediately in front of apartment 102. Minutes later, a burgundy Nissan with tinted windows pulled into the parking space next to the white Grand Am, and an African-American male exited the car and entered apartment 102. Other deputies then relayed to Disponzio that Williams said that the gun had jammed during the shooting at the motel. Disponzio reported the description of the two cars back to the other deputies. Williams said the Nissan should have Alabama plates on it, which Disponzio confirmed.

At approximately 2:40 a.m., Disponzio and other deputies knocked on the door of apartment 102, and Chris Scott answered the door. After opening the door, deputies led Scott out of the apartment and into custody. Deputies entered the apartment and arrested Khateefa Daniel and defendant without a warrant. Defendant and Scott both verbally consented to a search of the apartment, where deputies found a box for a 9 mm caliber handgun, two magazines for a handgun, and an empty 9 mm caliber ammunition box. Deputies transported defendant to the Sheriff's Office at approximately 3:47 a.m.

At the Sheriff's Office, defendant waived his *Miranda* rights in writing, and deputies began an interview at approximately 5:43 a.m. Defendant admitted his participation in the events at the motel. Defendant told deputies the guns used had been thrown into a river from a bridge in Spring Lake, and agreed to show deputies the location of the bridge. At approximately 6:40 a.m., a magistrate issued arrest warrants.

On 15 December 2002 at approximately 6:55 a.m., Disponzio and another deputy transported defendant to the bridge in Spring Lake,

but they did not recover the weapons. That afternoon, a man found a 9 mm caliber handgun in the river while fishing. On 16 December 2002, deputies discovered two 9 mm caliber magazines, and subsequently the Cumberland County Sheriff's dive team found a second 9 mm caliber handgun in the river.

On 22 April 2003, defendant was indicted for the offenses of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit first-degree murder and robbery with a dangerous weapon. On 6 August 2003, defendant filed a motion to suppress defendant's statements made at the Sheriff's Office and evidence obtained from the search of defendant's apartment.

On 22 January 2008, the trial judge entered an order suppressing all evidence seized pursuant to the entry and search of defendant's apartment. The trial judge denied the motion to suppress defendant's statements and any evidence resulting from those statements.

On 23 January 2008, the jury found defendant guilty of second-degree murder under a theory of acting in concert. Jury found defendant not guilty of robbery with a firearm, conspiracy to commit first-degree murder and robbery with a dangerous weapon. Defendant received an active sentence from the presumptive range of 150-189 months. Defendant appeals.

## II.  Denial of Motion to Suppress

In his only argument, defendant contends that the trial court erred in denying his motion to suppress evidence. We disagree.

## A.  Standard of Review

A trial court's findings of fact in a motion to suppress are conclusive and binding on appeal if supported by competent evidence. *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001) (quoting *State v. Brooks*, 337 N.C. 132, 140-41, 446 S.E.2d 579, 585 (1994)). The conclusions of law made from the findings of fact are reviewable *de novo. State v. Wilson*, 155 N.C. App. 89, 93-94, 574 S.E.2d 93, 97 (2002) (quoting *State v. Young*, 148 N.C. App. 462, 466, 559 S.E.2d 814, 818 (2002)), *disc. review denied*, 356 N.C. 693, 579 S.E.2d 98 (2003).

## B.  Probable Cause

[1] Defendant fails to assign as error any of the findings of fact made by the trial court. As a result, the findings of fact are binding on appeal, and our review is limited to whether the findings of fact sup-

port the trial court's conclusions of law. *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829-30 (2002) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court concluded the deputies had probable cause to arrest defendant.

If deputies have probable cause to arrest an individual, then the exclusionary rule does not bar the use of the individual's statements made after an illegal entry into the individual's home. *New York v. Harris*, 495 U.S. 14, 21, 109 L. Ed. 2d 13, 22 (1990).

Defendant argues the deputies did not have sufficient information to establish probable cause supporting his arrest, and his state and federal constitutional rights were violated by the trial court's denial of his motion to suppress.

The United States Constitution and the North Carolina Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20; *see State v. Sanchez*, 147 N.C. App. 619, 623, 556 S.E.2d 602, 606 (2001) (citations omitted), *disc. review denied*, 355 N.C. 220, 560 S.E.2d 358 (2002). "An arrest is *constitutionally* valid whenever there exists probable cause to make it." *State v. Chadwick*, 149 N.C. App. 200, 202, 560 S.E.2d 207, 209 (2002), *disc. review denied*, 355 N.C. 752, 565 S.E.2d 672 (2002) (quoting *State v. Wooten*, 34 N.C. App. 85, 88, 237 S.E.2d 301, 304 (1977)).

> Probable cause for an arrest has been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty . . . . To establish probable cause the evidence need not amount to proof of guilt, or even to prima facie evidence of guilt, but it must be such as would actuate a reasonable man acting in good faith.

*State v. Crawford*, 125 N.C. App. 279, 281-82, 480 S.E.2d 422, 423-24 (1997) (quoting *State v. Harris*, 279 N.C. 307, 311, 182 S.E.2d 364, 367 (1971)). Probable cause can be established through the use of information provided by informants, and the applicable test is a totality of circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 543-44 (1983), *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983); *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 261 (1984).

This test " 'permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an

informant's tip.' " *Chadwick*, 149 N.C. App. at 203, 560 S.E.2d at 209 (quoting *State v. Holmes*, 142 N.C. App. 614, 621, 544 S.E.2d 18, 22 (2001), *cert. denied*, 353 N.C. 731, 551 S.E.2d 116 (2001)). "The indicia of reliability of an informant's tip 'may include (1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be independently corroborated by the police.' " *State v. Rodgers*, 161 N.C. App. 311, 314, 588 S.E.2d 481, 483 (2003) (quoting *State v. Collins*, 160 N.C. App. 310, 315, 585 S.E.2d 481, 485 (2003), *aff'd*, 358 N.C. 135, 591 S.E.2d 518 (2004)).

Defendant argues that Williams' information must be given the same weight as information from an anonymous tipster because deputies knew nothing about his history of reliability. Williams did not merely make an anonymous phone call, but rather revealed his identity and met with deputies for an interview at the police station. Williams' direct involvement with deputies during the investigation is an indication of reliability beyond a single anonymous tip. Thus, Williams reliability as an informant is given substantial weight in a totality of circumstances analysis.

In *State v. Bone*, the court held that an anonymous tip corroborated by other matters within the detective's knowledge established probable cause for the warrantless arrest of defendant. *State v. Bone*, 354 N.C. 1, 10-11, 550 S.E.2d 482, 488 (2001). The tip claimed defendant was the murderer in a homicide, and the information included specific facts about defendant and details about the crime. *Bone*, 354 N.C. at 6, 550 S.E.2d at 485. The arresting detective corroborated the information contained in the tip with the particular facts about the crime uncovered during the investigation. This corroboration was an indication of reliability, which gave credibility to the anonymous tipster and the information. *Bone*, 354 N.C. at 11, 550 S.E.2d at 488. Based on the reliable information indicating defendant committed the homicide, the detective established the probable cause necessary to arrest defendant.

In the instant case, Disponzio corroborated the substantial amount of information Williams provided with facts gathered throughout the investigation prior to defendant's arrest. The independent corroboration gave credibility to the information and Williams as an informant. The corroboration as well as the substantial level of detail provided Disponzio with an additional indication that the information was reliable. *See Gates*, 462 U.S. at 234, 76 L. Ed. 2d at 545. Williams individually named defendant, how he com-

mitted the murder, why he committed the murder, and exactly where he lived.

The facts Williams revealed in the initial phone call confirmed details Disponzio previously acquired from the crime scene. The facts included the location of the motel, that a male victim was shot numerous times, that money was taken from his pockets, and that two males and one female were involved in the shooting. This information corresponded with forensic evidence found in the motel room and statements from unrelated witnesses at the motel.

Prior to leaving the Sheriff's Office, Disponzio learned the victim went to the motel to meet a female. This detail corresponded with Williams' statement that defendant's girlfriend set up the incident with the victim. This correlates with the scene of the crime because deputies found no signs of forced entry to the room.

While Disponzio conducted surveillance outside defendant's apartment, he saw a white Grand Am similar to the vehicle witnesses described leaving the scene. Moments later, the second vehicle witnesses described, a burgundy Nissan, pulled into the parking spot next to the Grand Am. Disponzio's investigation outside defendant's apartment corroborated eyewitness accounts of the individuals and vehicles fleeing the motel at the time of the shooting. This development constituted a separate basis to establish the probable cause necessary for the warrantless arrest of defendant, and further indicated the reliability of Williams and the details he provided to deputies.

Prior to the arrest, information obtained from Williams and relayed to Disponzio corroborated two more facts. Williams stated the burgundy Nissan had Alabama plates, and the gun jammed during the shooting, which explained the unfired bullet found on the floor in the motel room.

Williams named defendant as one of two individuals who shot the victim at the Coliseum Motel. The substantial level of detail and the independent corroboration indicated the reliability of the information Williams provided to Disponzio under a totality of circumstances analysis. *See Gates*, 462 U.S. at 234, 76 L. Ed. 2d at 545; *See also Collins*, 160 N.C. App. at 315, 585 S.E.2d at 485. Upon investigating the apartment, Disponzio discovered both vehicles reported at the scene, which provided a separate basis for probable cause to arrest defendant. The reliable information Williams provided combined with the investigation at the apartment established a reasonable ground of suspicion for Disponzio to believe defendant to be guilty.

IN RE M.S.

[199 N.C. App. 260 (2009)]

The record establishes that Disponzio had probable cause to arrest defendant prior to entering the apartment. Thus, the trial court properly denied defendant's motion to suppress his statements to deputies and the fruits garnered therefrom.

### III. Sanctions

[2] Rule 9(a)(3)a of the North Carolina Rules of Appellate Procedure provides that the record on appeal in a criminal action *shall contain* "an index of the contents of the record, which shall appear as the first page thereof." N.C.R. App. P. 9(a)(3) (emphasis added). The record in this matter contains no index. Appellate counsel for defendant is not a novice in bringing criminal appeals before this Court. A record without an index is a gross violation of the rules of appellate procedure. In its discretion, this Court imposes sanctions upon counsel for defendant in the amount of double the costs of the appeal. This sanction is imposed upon counsel personally, and she may not seek reimbursement of this amount from the Office of the Appellate Defender.

AFFIRMED.

Chief Judge MARTIN and Judge CALABRIA concur.