IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA20-16

Filed: 15 December 2020

Jones County, No. 14CRS050577

STATE OF NORTH CAROLINA

v.

CHRISTIAN CAPICE MOORE

Appeal by Defendant from judgment entered 29 July 2019 by Judge Paul M. Quinn in Jones County Superior Court. Heard in the Court of Appeals 11 August 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Melissa H. Taylor, for State-Appellee.*

*Benjamin J. Kull for Defendant-Appellant.*

COLLINS, Judge.

Defendant appeals from judgment entered upon his guilty plea to felony possession of marijuana. Defendant argues that the trial court erred by denying his motion to suppress, where (1) the officer applying for a warrant to search Defendant's residence acted in bad faith by presenting the magistrate with false and misleading information and (2) no probable cause existed to issue the search warrant. We reverse the trial court's order denying Defendant's motion to suppress and reverse the judgment entered upon Defendant's guilty plea.

## I. Background

Investigator Timothy W. Corey of the Jones County Sheriff's Office applied for a warrant on the eve of 25 November 2014 to search the premises at 133 Harriett Lane in Pollocksville ("133 Harriett Ln."), and any persons or vehicles located on that premises at the time of the search. The affidavit in support of the application included a "Statement of Probable Cause" in which Corey alleged the following:

> (1) This investigation is part of a continuing and ongoing narcotics investigation that involves the possibility of further undiscovered illegal narcotics and/or other narcotics paraphernalia or contraband in the aforementioned home located at 133 Harriet Ln. Pollocksville[.]
>
> (2) The source of information is coming from a [sic] ongoing investigation that leads investigators with the Jones County Sheriff's Office to introduce an informant that would gain the trust of the subjects living at the home and make controlled buys of illegal narcotics from this location.
>
> (3) On 10-09-2014, investigators met with an Informant, who stated that he was able to make buys from a subject by the name of "Matt", who lives at this location on Harriett Ln. And stated that he is known for dealing powder cocaine. I had the informant to set up [sic] a buy from this subject for a gram of cocaine. That day we were able to buy with no problem.
>
> (4) On 10-21-2014, investigators met with the informant to make a second buy from the same location, that time we were able to set up and watch the suspect known as "Matt" come out of the house and meet with the informant and return back to the home afterwards.
>
> (5) On 11-07-2014, investigators met with the informant to make a third buy from this location same as the last with no problems; subject known as "Matt" came from inside the

2

home and made the deal then returned back inside the residence.

(6) On 11-25-2014, investigators met with the informant to make a forth [sic] buy from this location. At that time the suspect "Matt", made it clear that he was re-upping (getting more drugs) and told the informant that he would be good for whatever he needed.

(7) Based off of this information in this investigation, I am requesting this search warrant of this suspect's property for any and all narcotics and cash proceeds. Due to my training and experience, I have reason to believe that illegal narcotics, narcotic/drug paraphernalia, large amounts of US Currency, are being kept and sold from this location.

(8) Based on all of the findings of my investigation, I am able to show that the suspect listed above is in direct violation of the NC controlled substances act. By keeping and selling illegal narcotics at the residence located at 133 Harriet Ln. Pollocksville.

Upon the information and allegations contained in the application and affidavit, a magistrate determined that sufficient probable cause existed and issued the search warrant. Corey and other officers executed the warrant the following morning. Given the items seized during the search, Defendant, who is not the suspect "Matt" referred to in the affidavit, was arrested and indicted for possession with intent to sell or distribute a Schedule VI controlled substance, and maintaining a dwelling house for using, keeping, or selling controlled substances.

On 11 May 2016, Defendant filed a motion to suppress the evidence seized as a result of the search. Defendant argued that the search warrant was not supported

by probable cause and that the affidavit "contains unsubstantiated information from an informant, false or misleading statements, and no allegations tending to establish that controlled substances were present in the residence or the vehicles located there."

On 22 January 2019, Defendant filed a supplemental affidavit in support of his motion to suppress in which defense counsel averred, in relevant part, as follows:

> 7. The [search warrant] application is written in such a way as to lead a reader to conclude that the "buys" were made at the property of 133 Harriett Lane, Pollocksville. However, [I have] reviewed copies of Detective Corey's reports concerning October 9, October 21, and November 7, 2014 reports of controlled buys from a suspect known as "Matt" on those days. According to those reports, the October 9, 2014 buy occurred at the corner of Ten Mile Fork Road and Highway 17, over one mile from 133 Harriett Lane, Pollocksville. The October 21, 2014 buy occurred "down the road"; and the November 7, 2014 buy occurred on Killis Murphy Road, over one mile from the 133 Harriet Lane address.
>
> . . . .
>
> 9. Upon information and belief, [t]he statements by the affiant in his application for a search warrant that all the "buys" were made from the same location, which he previously referred to 133 Harriett Lane are misleading, and to the extent intended to portray that the buys were made from 133 Harriett Lane are false. As they were made by Detective Corey, the same detective involved in conducting the alleged controlled buys on the dates in question, these statements were knowingly made, and made with a reckless disregard for the truth.

4

Attached to the supplemental affidavit were copies of Corey's police reports concerning the alleged controlled buys from a suspect known as "Matt" on 9 October, 21 October, and 7 November 2014.

The trial court held a hearing on Defendant's motion to suppress on 23 January 2019. The trial court first considered the four corners of Corey's search warrant application and affidavit and heard arguments of counsel. No testimony or other evidence was presented.

At the close of the arguments, the court announced, "I'll do the order on this, but I'm going to indicate to you the findings of fact that I'll be including in that order[.]" The court found that "[i]n the application for the search warrant, [Corey] asserts there's probable cause to believe that 133 Harriet Lane, Pollocksville, North Carolina, a tan in color double-wide, with gray shingles are [sic] storing and selling narcotics" and "[a]gain alleg[es] that it's happening at 133 Harriet Lane in Pollocksville." The court then turned to the affidavit and considered the "eight, numbered paragraphs which purport to be the statement of probable cause for the issuance of the search warrant." After reciting the allegations in those paragraphs, and finding that the magistrate relied solely upon those factual allegations in issuing the warrant, the trial court found, in part:

> [I]t appears that based on the information and personal observation of the detective, that a buy was made at the 133 Harriet Lane address in Pollocksville on October 9, 2014. And, as I read it, it seems to me the plain language

5

of this affidavit is that on October 9, 2014, a gram of cocaine was purchased at that location from a subject by the name of Matt.

. . . .

[T]he Court finds -- and this is the totality of the circumstances, and giving proper deference to the decision of the magistrate -- it appears there were two purchases made, and that would be a substantial basis for concluding there was probable cause to issue the search warrant.

The trial court then considered Defendant's supplemental affidavit and Corey's police reports, and heard arguments from the State and Defendant on the threshold inquiry required under *Franks v. Delaware*, 438 U.S. 154 (1978). Under this inquiry, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and the allegedly false statement must be necessary to the probable cause determination. *Id.* at 155-56. Defendant argued that the drug buys did not occur at 133 Harriet Ln., that Corey was the lead investigator present for all of the buys and had knowledge of the actual locations of the buys, and that Corey's affidavit statements to the contrary were false and demonstrated a reckless disregard for the truth. Defendant further argued that when the false allegations were stricken from the affidavit, the search warrant application was not supported by probable cause. The State argued to the contrary. The trial court determined that Defendant met the threshold inquiry and allowed Defendant to put

6

on evidence of Corey's allegedly false statements. Defendant introduced the police reports and called Corey as witness.

During direct examination, Corey admitted that none of the buys actually took place at 133 Harriet Ln. and affirmed that he knew that at the time he wrote his affidavit in support of the search warrant. Defendant inquired about Corey's affidavit and his description that the informant made "controlled buys of narcotics from this location." He asked Corey, "are you talking about the home and location of [133 Harriet Ln.]?" Corey replied, "I'm talking about the subjects residing in that home that's selling narcotics, sir." On cross examination, the State asked, "So you're not really -- when you say 'the same location,' you don't mean Ten Mile Road or whatever it is, and you don't mean 133 Harriet Lane. You mean from this guy ['Matt'], the same location that we're watching come out of the house, and go back in the house, that's how you're characterizing this?" Corey replied, "Exactly. Yes."

At the conclusion of the hearing, the trial court ruled as follows:

> I am going to deny the motion. Here's why, and I'll do the order. I gave my reason about the motion to suppress the first motion and said that in reading it, I felt that you should conclude that the location of the transactions was the Harriet Lane address. At this stage, I've got the benefit of what the magistrate got, plus the attachments to the supplemental affidavit, and more importantly the testimony of the officer. And then we reading that language [sic], as the DA sort of focused in on, those allegations in the warrant just say, "the location."

7

> The officer's testified, you know, he's talking about a seller coming from Harriet Lane, going to these specific places that he's disclosed to where the transactions actually took place. So, in looking at it with the benefit of that extra information, I don't believe there's been any showing that the statements were false, the statements in the affidavit. I don't believe they were false, so I don't have to reach anything else.
>
> I think when you read them in light of the officer -- I read them so I wouldn't look at them and, after the fact, based just on the warrant, and concluded that we're talking about Harriet Lane. When you go back and read them, they don't actually say the buys took place at Harriet Lane. They really don't say that. They don't say where. They don't say Harriet Lane. They just say "the location." So there's nothing about that statement in light of the officer's explanation for what prompted him to submit that affidavit that would lead the Court to conclude that he either made a false statement or was somehow recklessly in disregard of the truth. It appears to me, on its face, it's true at this point.

On 24 January 2019, the trial court issued a written order denying Defendant's motion to suppress. The trial court left undisturbed its oral findings of fact and conclusions of law based on the evidentiary *Franks* hearing and did not reduce them to writing. The written order included findings of fact upon which the trial court concluded that "the application and affidavit of Detective Corey provided adequate support for the magistrate's finding of probable cause for the issuance of the search warrant in this case." The trial court denied Defendant's motion to suppress.

Defendant pled guilty to felony possession of marijuana; pursuant to the plea agreement, the State dismissed the remaining charge of maintaining a dwelling for

using, keeping or selling controlled substances. The trial court sentenced Defendant to 8-19 months' imprisonment, suspended the sentence, and placed Defendant on 24 months' supervised probation. Defendant was ordered to pay $372.50 in court costs and remain gainfully employed while on probation. Defendant gave proper notice of appeal in open court.

## II. Discussion

Defendant argues that the trial court erred by denying Defendant's motion to suppress, where (1) the officer applying for a warrant to search Defendant's residence acted in bad faith by presenting the magistrate with false and misleading information and (2) no probable cause existed to issue the search warrant.

*A. False and Misleading Information*

The standard of review in evaluating a trial court's rulings on a *Franks* hearing is the same as the standard of review in evaluating a trial court's ruling on a motion to suppress. *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997). Thus, our review is limited to whether the trial court's findings of fact are supported by competent evidence, and whether the findings of fact support the trial court's conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "Further, the trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." *Fernandez*, 346 N.C. at 11, 484 S.E.2d at 357 (citation omitted).

9

Although the trial court held an evidentiary *Franks* hearing on the veracity of Corey's allegations in the affidavit, the trial court did not include in its written order denying Defendant's motion to suppress findings of fact or conclusions of law resulting from the hearing. However, as the trial court made oral findings of fact and conclusions of law based on the *Franks* hearing, we will review the trial court's oral findings to determine if they are supported by competent evidence and to determine if they support the trial court's conclusions of law. *See State v. Oates*, 366 N.C. 264, 268, 732 S.E.2d 571, 574 (2012) ("While a written determination is the best practice, nevertheless the statute does not require that these findings and conclusions be in writing.") (citation omitted).

It is well settled that a search warrant must be based on probable cause. *Fernandez*, 346 N.C. at 13, 484 S.E.2d at 358; *see* U.S. Const. amend. IV. "Probable cause for a search [warrant] is present where facts are stated which establish reasonable grounds to believe a search of the premises will reveal the items sought and that the items will aid in the apprehension or conviction of the offender." *Fernandez*, 346 N.C. at 13, 484 S.E.2d at 358 (citation omitted). An application for a search warrant must include (1) a statement of probable cause indicating that the items specified in the application will be found in the place described; and (2) "one or more affidavits particularly setting forth the facts and circumstances establishing

probable cause to believe that the items are in the places or in the possession of the individuals to be searched[.]"  N.C. Gen. Stat. § 15A-244 (2019).

"It is elementary that the Fourth Amendment's requirement of a factual showing sufficient to constitute 'probable cause' anticipates a truthful showing of facts."  *Fernandez*, 346 N.C. at 13, 484 S.E.2d at 358 (citing *Franks*, 438 U.S. at 164-65).  "[T]ruthful" in this context means "that the information put forth is believed or appropriately accepted by the affiant as true."  *Franks*, 438 U.S. at 165; *see also* N.C. Gen. Stat. § 15A-978(a) (2019) ("[T]ruthful testimony is testimony which reports in good faith the circumstances relied on to establish probable cause.").  There is a presumption of validity with respect to the affidavit supporting the search warrant. *Franks*, 438 U.S. at 171.

"A defendant may contest the validity of a search warrant and the admissibility of evidence obtained thereunder by contesting the truthfulness of the testimony showing probable cause for its issuance."  N.C. Gen. Stat. § 15A-978(a). "Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request."  *Franks*, 438 U.S. at 154.

Upon an evidentiary hearing, the only person whose veracity is at issue is the affiant himself. *Id.* at 171. "The defendant may contest the truthfulness of the testimony by cross-examination or by offering evidence." N.C. Gen. Stat. § 15A-978(a). "A claim under *Franks* is not established merely by evidence that contradicts assertions contained in the affidavit, or even that shows the affidavit contains false statements. Rather, the evidence must establish facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith." *Fernandez*, 346 N.C. at 14, 484 S.E.2d at 358 (citation omitted). In the context of an omission, a violation occurs where an "affiant[] omit[s] material facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading." *U.S. v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks and citation omitted).

If a defendant establishes by a preponderance of the evidence that a "false statement knowingly and intentionally, or with reckless disregard for the truth" was made by an affiant in an affidavit in order to obtain a search warrant, that false information must be then set aside. *Franks*, 438 U.S. at 155-56. If "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

12

In this case, Corey's affidavit in support of the application for a warrant to search 133 Harriet Ln. stated that there was an investigation involving the possibility of drugs and paraphernalia in the "home *located at 133 Harriet Ln.*" (Emphasis added). Investigators "introduce[d] an informant that would gain the trust of the subjects living at the home and *make controlled buys of illegal narcotics from this location.*" (Emphasis added). The affidavit further stated:

> (3) On 10-09-2014, investigators met with an Informant, who stated that he was able to make buys from a subject by the name of "Matt", who lives *at this location on Harriett Ln.* And stated that he is known for dealing powder cocaine. I had the informant to set up a buy [sic] from this subject for a gram of cocaine. That day we were able to buy with no problem.
>
> (4) On 10-21-2014, investigators met with the informant to make a second buy *from the same location*, that time we were able to set up and watch the suspect known as "Matt" come out of the house and meet with the informant and return back to the home afterwards.
>
> (5) On 11-07-2014, investigators met with the informant to make a third buy *from this location same as the last* with no problems; subject known as "Matt" came from inside the home and made the deal then returned back inside the residence.
>
> (6) On 11-25-2014, investigators met with the informant to make a forth [sic] buy *from this location.* At that time the suspect "Matt", made it clear that he was re-upping (getting more drugs) and told the informant that he would be good for whatever he needed.
>
> (7) Based off of this information in this investigation, I am requesting this search warrant of this suspect's property

13

for any and all narcotics and cash proceeds. Due to my training and experience, I have reason to believe that illegal narcotics, narcotic/drug paraphernalia, large amounts of US Currency, are being kept and sold *from this location*.

(Emphasis added).

Defendant moved to suppress the evidence seized from 133 Harriet Ln. on the grounds that the affidavit contained false and misleading information because none of the alleged controlled drug buys and meetings took place at 133 Harriet Ln. Attached to the supplemental affidavit supporting the motion to suppress were Corey's police reports concerning the alleged controlled buys from "Matt" on 9 October, 21 October, and 7 November 2014.

Corey's police report documenting the 9 October events states, in relevant part:

I had the informant make a call to the suspect to set up a buy of cocaine. The suspect told the informant to meet with him at the corner of tem [sic] mile fork and hwy 17, stated that he didn't need anyone at the house right now.

. . . .

I . . . sent him to the meeting location to make the buy of cocaine from the suspect.

Deputy Taylor and I then set up where we were able to see the suspects home Just as we got in place we saw the suspect come out of the house . . . and get in a small black four door car. We fallowed [sic] the suspect down to where our informant was weighting [sic] at the meeting location.

As the suspect pulled in to meet with our informant we went down the road and parked where we had sight of

the meeting location after the deal was complete we fallowed [sic] the suspect back to Harriett ln. . . .

Corey's police report documenting the 21 October events states, in relevant part:

> I had the informant make a call to the suspect to set up a buy of cocaine. The suspect told the informant to meet with him at the same spot as last time (tem [sic] mile fork and hwy 17).
>
> . . . .
>
> Capt. Bateman and I then set up where we were able to see the suspects home. I received a call from the informant telling me that the suspect had called him and changed the meeting location. The informant stated that now he wanted him to pick up him up [sic] at the end of Harriett Ln. . . .
>
> We saw the suspect come out of the house, dressed in a dark shirt and pajama pants then got in the vehicle with the informant. they drove down the road a short way and turned around then came back and dropped the suspect off at the end of Harriett Ln. the transaction took place darning [sic] this short ride down the road and back.

Corey's police report documenting the 7 November events states, in relevant part:

> I had the informant make a call to the suspect to set up a buy of cocaine. The suspect told the informant to meet with him at the same spot as last time (tem [sic] mile fork and hwy 17). . . .
>
> . . . .
>
> . . . . I then . . . sent him to the meeting location to make the buy of cocaine from the suspect.

15

> Deputy Ervin and I then went to set up where we were able to see the suspects home. I received a call from the informant telling me that the suspect had called him and changed the meeting location. The suspect told the informant to follow him and the [sic] went down hwy 17 and turned on Killis Murphy rd. and the suspect stopped and motioned for the suspect to come up to him as the informant approached the vehicle the suspect gave him a clear plastic bag with white powder inside and the informant gave him the $85.00 in US Currency.

On direct examination, Corey admitted that, at the time he wrote his affidavit, he knew that none of the drug buys took place at 133 Harriet Ln.

Although the trial court found that Corey testified that he was "talking about a seller coming from Harriet Lane, going to these specific places that he's disclosed to where the transactions actually took place," this finding is not supported as Corey never "disclosed" in the affidavit "these specific places . . . where the transactions actually took place." Moreover, although the trial court found that the allegations in the affidavit "don't actually say the buys took place at Harriet Lane . . . [t]hey just say 'the location,'" this finding is not supported as the plain language of the affidavit indicates that "this location" is 133 Harriet Ln. and that the alleged controlled drug buys and meetings between "Matt" and the informant took place at 133 Harriet Ln.

The trial court was itself misled by the statements in the affidavit. After it first reviewed Corey's affidavit on its face, and found that the magistrate relied solely on those factual allegations in issuing the search warrant, the trial court announced

16

> it appears that based on the information and personal observation of the detective, that a buy was made at the 133 Harriet Lane address in Pollocksville on October 9, 2014. And, as I read it, it seems to me the plain language of this affidavit is that on October 9, 2014, a gram of cocaine was purchased at that location from a subject by the name of Matt.

The trial court determined that two of the four drug buys took place "at that address on Harriet Lane" and concluded that probable cause existed to believe that "drug offenses were being committed at that address on Harriet Lane." Only after the *Franks* hearing, wherein Defendant introduced Corey's reports and questioned Corey, did the trial court understand that the buys did not take place at 133 Harriet Ln.

The trial court's conclusion that the statements were not false is not supported by the evidence presented at the *Franks* hearing, including the plain language of Corey's affidavit, his police reports, or his testimony. Contrary to the trial court's conclusion, Corey's statements in his affidavit indicating that the alleged controlled drug buys and meetings between "Matt" and the informant took place at 133 Harriet Ln. were false and his material omissions regarding the actual locations of the drug buys and meetings were misleading.

While "every false statement in an affidavit is not necessarily made in bad faith[,]" *State v. Severn*, 130 N.C. App. 319, 323, 502 S.E.2d 882, 885 (1998), in this case, Corey admitted that none of the controlled drug buys took place at 133 Harriet Ln. and that he knew this at the time he applied for the search warrant. By omitting

that "Matt" drove from 133 Harriet Ln. to conduct the drug buys at locations over a mile away, and indicating instead that they had occurred at 133 Harriet Ln., Corey knowingly made false statements. "A person may not knowingly make a false statement in good faith for the purposes of an affidavit in support of a search warrant." *Id.*

Because the statements indicating the drug buys and meetings between "Matt" and the informant were false and made in bad faith, they must be stricken from the affidavit. *Franks*, 438 U.S. at 155-56. If "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Id.* at 156.

*B. Probable Cause*

A magistrate's determination of probable cause must be based upon the totality of the circumstances. *State v. Benters*, 367 N.C. 660, 664, 766 S.E.2d 593, 597 (2014). Under the "totality of the circumstances" test,

> [t]he task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . concluding" that probable cause existed.

*State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 257-58 (1984) (brackets and citation omitted).

An application for a search warrant must be supported by statements "particularly setting forth the facts and circumstances establishing probable cause to believe that the items are in the places . . . to be searched . . . ." N.C. Gen. Stat. § 15A-244(3). "Our case law makes clear that when an officer seeks a warrant to search a residence, the facts set out in the supporting affidavit must show some connection or nexus linking the residence to illegal activity." *State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020). This nexus is generally established by "showing that criminal activity actually occurred at the location to be searched[.]" *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990). "[H]owever, where such direct information concerning the location of the objects is not available[,] . . . it must be determined what reasonable inferences may be entertained concerning the likely location of those items." *Id.* (quotation marks and citation omitted). "The affidavit must also set forth circumstances from which the officer concluded that his informant was reliable." *State v. Altman*, 15 N.C. App. 257, 259, 189 S.E.2d 793, 795 (1972).

When Corey's false statements are stricken, the affidavit essentially alleges the following: There is an investigation involving the possibility of drugs and paraphernalia at 133 Harriet Ln. An informant was introduced who was to make controlled drug buys from 133 Harriet Ln. Investigators met with the informant on

9 October 2014. The informant stated he could make buys from "Matt," who lives at 133 Harriett Ln. and is known for dealing powder cocaine. The informant was able to buy an ounce of cocaine from Matt on 9 October 2014. Investigators met with the informant on 21 October 2014 and watched "Matt" come out of the Residence, meet with the informant, and go back into the Residence. Investigators met with the informant on 11 November 2014; "Matt" came from inside the Residence, sold drugs to the informant, then returned back inside the Residence. Investigators met with the informant on 25 November 2014; Matt would be getting more drugs and told the informant he would be good for whatever he needed.

The totality of the allegations potentially linking 133 Harriet Ln. to illegal activity are that "Matt" is known for dealing powder cocaine; "Matt" lives at 133 Harriet Ln.; and on 11 November 2014, "Matt" came from inside 133 Harriet Ln., sold drugs to the informant, then returned back inside 133 Harriet Ln. These allegations are not sufficient to show a nexus linking 133 Harriet Ln. to illegal activity. *See Bailey*, 374 N.C. at 338, 841 S.E.2d at 282 (holding that a nexus was established where a detective personally observed an encounter which he believed was a drug deal between two people who "had a history of dealing drugs"; the buyer was stopped shortly after purchasing the drugs and confirmed that she had just purchased heroin; that another officer continuously observed two of the participants travel from the

drug deal to the residence; and that the detective knew that this was where the two participants lived).

There is no allegation that "Matt" sold the drugs to the informant from, on, or near 133 Harriet Ln.; no allegation that "Matt" was under continuous surveillance from the time he left 133 Harriet Ln. to the time he sold the drugs to the informant on 11 November 2014; and no allegation that the events on 11 November 2014 were based on Corey's own observation. *See State v. Campbell*, 282 N.C. 125, 131, 191 S.E.2d 752, 757 (1972) (holding an affidavit invalid where drugs were not possessed in or sold from the dwelling to be searched, but were instead found inside a trash can outside of the dwelling, and "[t]he inference the State [sought] to draw from the contents of [the] affidavit . . . [did] not reasonably arise from the facts alleged"). The lack of nexus is even more stark when the omitted facts—the actual locations of the transactions, the fact that "Matt" drove to the first two transactions, and that the informant picked "Matt" up at the end of Harriet Ln. and conducted the transaction in the car—are read into the affidavit. *See United States v. Lull*, 824 F.3d 109, 118 (4th Cir. 2016) (determining that the investigators "omissions therefore prevented a neutral magistrate from being able to accurately assess the reliability and the veracity, and thus the significance, of the informant's statements").

Moreover, there are no allegations as to the reliability of the informant. *See Altman*, 15 N.C. App. at 259, 189 S.E.2d at 795 (The affiant's statement that the

confidential informant "has proven reliable and credible in the past . . . are the irreducible minimum on which a warrant may be sustained.") (quotation marks omitted).

The allegations in the affidavit do not support a determination that there is a "fair probability that contraband or evidence of a crime will be found in" 133 Harriet Ln. *See McCoy*, 100 N.C. App. at 576, 397 S.E.2d at 357. Accordingly, "'the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.'" *Severn*, 130 N.C. App. at 323, 502 S.E.2d at 884 (quoting *Franks*, 438 U.S. at 156).

### III. Conclusion

The trial court erred by denying Defendant's motion to suppress, where Corey acted in bad faith by presenting the magistrate with false and misleading information and no probable cause existed to issue the search warrant. We reverse the trial court's order denying Defendant's motion to suppress and reverse the judgment entered upon Defendant's guilty plea.

REVERSED.

Chief Judge McGEE concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

Defendant failed to show the search warrant or the affidavit was false, made in bad faith, was contrary to the actual facts or was asserted "to conceal from the defendant" how the evidence was obtained. *State v. Severn*, 130 N.C. App. 319, 323, 502 S.E.2d 882, 885 (1998). The majority's opinion erroneously substitutes its judgment on the evidence and findings, and reverses the trial court's denial of Defendant's motion to suppress. I respectfully dissent.

## I. Standard of Review

The scope of this Court's review of a trial court's order denying a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Bone*, 354 N.C. 1, 7, 550 S.E.2d 482, 486 (2001) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied*, 535 U.S. 940, 152 L. Ed. 2d 231 (2002)).

The trial court's conclusions of law are reviewed *de novo*. *State v. McCollum*, 334 N.C. 208, 237, 433 S.E.2d 144, 160 (1993) (citation omitted), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). Whether an application for a search warrant is invalid for including false or misleading information is a conclusion of law that is also reviewed *de novo*. *See State v. Parks,* 265 N.C. App. 555, 570-73, 828 S.E.2d 719, 729-31 (2019), *disc. review denied*, 374 N.C. 265, 839 S.E.2d 851 (2020).

## II. Analysis

### A. False and Misleading Information

"A defendant may contest the validity of a search warrant and the admissibility of evidence attained from the evidence by contesting the truthfulness of the testimony showing probable cause for its issuance." N.C. Gen. Stat. § 15A-978(a) (2019). A "truthful" showing of the facts does not require "every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded . . . upon information received from informants, as well as . . . the affiant's own knowledge that sometimes must be garnered hastily." *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997) (citing *Franks v. Delaware*, 438 U.S. 154, 165, 57 L. Ed. 2d 667, 678 (1978)). "Instead, truthful means that the information put forth is believed or appropriately accepted by the affiant as true." *Severn*, 130 N.C. App. at 322, 502 S.E.2d at 884 (citation and internal quotation marks omitted).

During the evidentiary hearing, only the affiant's veracity is at issue. *Id.* A defendant cannot suppress the warrant by simply presenting evidence which "contradicts assertions contained in the affidavit or . . . shows the affidavit, contains false statements." *Id.* (citation omitted). Rather, the evidence presented "must establish facts from which the finder of fact might conclude that the affiant alleged the facts in bad faith." *Id.* (citation omitted).

Defendant asserts Detective Corey gave false information to the magistrate in bad faith because the drug buys did not take place at the residence, but rather from two separate locations. Defendant argues this case is analogous to *State v. Severn*. In *Severn*, during a drug investigation a detective surveilled the defendant's residence and searched through the defendant's trash bin, located outside of the residence. *Id.* at 321, 502 S.E.2d at 883. Inside the bin, the detective found "cocaine residue on the inside of [a] straw and two grams of marijuana." *Id.*

The detective applied for a search warrant. The detective claimed in an affidavit to have found the evidence inside the defendant's residence, by using "investigative means" in support of the search warrant. *Id.* at 320-21, 502 S.E.2d at 883-84. During the suppression hearing, the detective testified he had never "personally [gone] inside the residence" and he had "deduced that the [evidence] had been inside the residence." *Id.*

This Court held the detective knowingly made a false statement in bad faith because the statement was contrary to the actual facts, the detective knew it was false, and only did so "to conceal from the defendant" how the evidence was obtained. *Id.* at 323, 502 S.E.2d at 885.

In the present case, Defective Corey's affidavit stated: on 9 October 2014, the confidential informant was able to buy from "Matt, who lives at this location on Harriett Ln." On 21 October 2014, investigators met with the confidential informant

to make a second buy from Matt, who lived at "the same location."  During this drug buy, Detective Corey and other investigators watched the suspect known as Matt "come out of the house and meet with the [confidential] informant and return back" to the residence.

On 7 November 2014, "investigators met with the [confidential] informant to make a third buy from this location same as the last."  The same suspect "Matt came from inside the home and made the deal then returned back inside the residence." On 25 November 2014, investigators met with the confidential informant to meet Matt and make a fourth "buy from this location."

Unlike in *Severn*, Detective Corey did not state anywhere in his affidavit that any of the drug buys were made at or from inside the Harriett Lane residence. Detective Corey testified that when he referred to "this location" or "the same location," he was referring to the source or place from where Matt and the drugs are coming from, not the physical location of the drug buys.  Defendant offers nothing to refute Detective Corey's testimony of the other assertions made in the application and affidavit.  While the affidavit could have used clearer language, nothing asserted in the affidavit was false, made in bad faith, was contrary to the actual facts or was asserted "to conceal from the defendant" how the evidence was obtained. *Id.*

Unlike the inside/outside statement in the officer's affidavit from *Severn*, Detective Corey did not make any false statement in bad faith. *Id.* Defendant's argument is properly overruled.

### B. Probable cause

The Fourth Amendment of the Constitution of the United States provides "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Our Supreme Court has adopted the "totality of the circumstances" test for determining whether probable cause exists for issuance of a search warrant under the state's constitution. *State v. Lowe*, 369 N.C. 360, 364, 794 S.E.2d 282, 285 (2016).

Under this test, an application for a search warrant must be supported by an affidavit detailing "the facts and circumstances establishing probable cause to believe that the items are in the places . . . to be searched." N.C. Gen. Stat. § 15A-244(3) (2019). The information contained in the affidavit "must establish a nexus between the objects sought and the place to be searched." *State v. McCoy*, 100 N.C. App. 574, 576, 397 S.E.2d 355, 357 (1990) (citation omitted). A magistrate must "make a practical, common-sense decision," based upon the totality of the circumstances, whether "there is a fair probability that contraband" will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983).

Unlike the majority's opinion's analysis, the judicial officer's determination of probable cause is to be given "great deference" and "after-the-fact scrutiny should not take the form of a *de novo* review." *State v. Arrington*, 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984). Instead, as the trial court found, a reviewing court is responsible for ensuring that the issuing magistrate had a "substantial basis for . . . conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548 (citation omitted).

The trial court's order asserts the following factors, *inter alia*, to support the magistrate's finding of probable cause: (1) a confidential informant advised the investigators he was able to make illegal drug buys from Matt, who resided at the residence at Harriett Lane; (2) Detective Corey dispatched the confidential informant to make "buys" of illegal drugs from Matt on four separate occasions; (3) on 9 October 2014 the confidential informant purchased a gram of cocaine from Matt; (4) on every occasion, Detective Corey witnessed Matt leave the residence at Harriett Lane, meet with the confidential informant to complete the buy, and return to the residence; and, (5) on 25 November 2014, Matt told the confidential informant he was, "re-upping," getting more drugs, and would be "good" for further supply. Defendant's argument is properly overruled.

*1. Stale Information*

Defendant argues the evidence described in Detective Corey's affidavit was stale. "Generally, two factors determine whether evidence of previous criminal activity is sufficient to later support a search warrant: (1) the amount of criminal activity and (2) the time period over which the activity occurred." *McCoy*, 100 N.C. App. at 577, 397 S.E.2d at 358.

"[W]here the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *Id.* (citation omitted). This Court has held evidence, which occurred twenty months prior to the execution of a search warrant, was not so far removed to be considered stale as a matter of law. *State v. Howard*, 259 N.C. App. 848, 854, 817 S.E.2d 232, 237 (2018).

Over the course of only two months, the confidential informant was able to complete four illegal drug-related transactions with Matt while he resided at the residence on Harriett Lane. The last buy occurred eighteen days before the search warrant was issued. The last interaction, when Matt informed the confidential informant, he was re-upping his supply, occurred on the same day the search warrant was issued by the magistrate. The evidence of the four separate buys from Matt who lived at Harriett Lane and was described in the affidavit was not stale. A short time had passed from the last interaction with Matt, the search warrant being issued, and the search warrant being executed. Defendant's argument is properly overruled.

## *2. Reliable Information*

Defendant also argues the application and affidavit did not establish probable cause because Detective Corey's affidavit did not show the confidential informant was reliable. This Court has held probable cause may be shown through tips and information provided by informants. *State v. Brown*, 199 N.C. App. 253, 257, 681 S.E.2d 460, 463 (2009). "The indicia of reliability of an informant's tip" includes: (1) "whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be independently corroborated by the police." *Id.* at 258, 681 S.E.2d at 463 (citation omitted).

The information provided by the confidential informant was independently verified by Detective Corey, who surveilled all four illicit drug interactions as they occurred between "Matt" and the confidential informant at the residence. Also, officers met with the confidential informant on 9 October 2014 and then had the confidential informant buy one gram of cocaine from Matt on the same day. The affidavit states the confidential informant was involved in an ongoing drug investigation in Jones County. The magistrate could reasonably have concluded the informant was known to the investigator from the multiple transactions and had a history of reliability. Defendant's argument is overruled.

Finally, applying the totality of circumstances test, the trial court properly concluded a substantial basis was shown for finding probable cause to search the residence. The confidential informant had purchased drugs from Matt at least four times in a two-month period while Matt had lived at the residence. Detective Corey witnessed Matt leave the residence, meet with the confidential informant, the illicit exchanges occur, and Matt return to the residence. Matt told the confidential informant he had resupplied his drug inventory the day before the search warrant was issued.

The nexus and chain of custody between the residence, Matt, the informant, and the contraband recovered therefrom on numerous occasions was sufficiently established by the application and Detective Corey's affidavit. A substantial basis was presented for the magistrate to conclude illegal drugs were located inside of the residence and to deny Defendant's motion to suppress. Probable cause supports the issuance of the warrant to search the residence. Defendant's arguments are properly overruled.

## III. Conclusion

Defendant failed to show Detective Corey provided false and misleading information or used bad faith in preparing the application for the search warrant and his supporting affidavit to the magistrate. The search warrant was based upon timely and reliable information of multiple drug transactions over a two-month period to

support probable cause to search the residence. Using the proper appellate standard of review of the trial court's order, Defendant's motion to suppress was properly denied. The judgments entered upon Defendant's guilty plea are properly affirmed. I respectfully dissent.